406 A.2d 746.

Appeal of Helen Babula KARTORIE from the Decision of the Pennsylvania Board of Law Examiners.

Supreme Court of Pennsylvania.

Oct. 10, 1979.

Susan L. Anderson, Philadelphia, for respondent.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and Flaherty, JJ.

PER CURIAM.

Petition is denied.

ROBERTS, J., filed a statement in support of the Order denying petition.

MANDERINO, J., filed a Dissenting Opinion in which LARSEN and FLAHERTY, JJ., join.

## STATEMENT OF MR. JUSTICE ROBERTS EMPHASIZING THE SOUND EDUCATIONAL POLICY BEHIND PENNSYLVANIA BAR ADMISSION RULE 204

ROBERTS, Justice.

It is indeed regrettable that there appears a need to restate and reemphasize this Court's commitment to the wisdom and propriety of the American Bar Association accreditation requirement for admission to the Pennsylvania Bar. Petitioner Helen Babula Kartorie applied for admission to our Bar on motion under Pa.B.A.R. 204. The Pennsylvania Board of Law Examiners denied the application because Ms. Kartorie did not satisfy Rule 204's requirement of graduation from a law school accredited by the American Bar Association.[1] The record reveals that petitioner attend-

---

1. Rule 204 in part requires:

   "As an alternative to satisfying the requirements of Rule 203 (relating to admission of graduates of accredited institutions), an attorney of another state may be admitted to the bar of this Commonwealth if applicant is a member of the bar of a reciprocal state and meets the following qualifications:

   *   *   *   *   *   *

   (3) Satisfaction of the requirements of Paragraphs (1) through (3) of Rule 203.
   Rule 203 in part requires:
   "The general requirements for admission to the bar of this Commonwealth are:

   *   *   *   *   *   *

   (2) Receipt of an earned Bachelor of Laws or Juris Doctor degree from an accredited law school."
   Rule 102 defines "accredited law school" as a "law school accredited by the American Bar Association."

ed an unaccredited law school in Ohio from September 1934 to June 1938. The law school was not accredited by the A.B.A. until 1957, nineteen years after petitioner's graduation. Petitioner has appealed to this Court requesting admission to the Bar without examination, although she did not graduate from an A.B.A. accredited law school as required by Rule 204. This Court, consistent with sound legal educational principles, and in accordance with its long established practice, sustained the Board of Law Examiners and denied the appeal.*

No rule, principle, or doctrine is more firmly established in this Court's jurisprudence than the requirement of graduation from an A.B.A. approved law school as a prerequisite for admission to the Pennsylvania Bar. There is no reason why this applicant should be treated any differently from the more than 24,000 members of the Pennsylvania Bar who have already fulfilled this educational requirement.

It has long been the practice of this Court to rely upon the professional judgment and expertise of the American Bar Association in evaluating the quality of the legal education provided by America's legal institutions. Rule 204 and its predecessors embody our commitment to this practice. It is a commitment shared by no less than thirty-four states and the District of Columbia, as well as the territories of Guam, Puerto Rico, and the Virgin Islands.[2] Indeed, the federal government, through the United States Commissioner of Education, has recognized the A.B.A. as the national accrediting agency of law schools since 1952.

In light of the overwhelming and long established acceptance of the sound legal educational policies embodied in Rule 204, any notion that it is unconstitutional must be considered

* The order of denial is joined by Chief Justice Eagen, Justice O'Brien, Justice Nix and the writer.

2. These thirty-four states, the District of Columbia, and the territories of Guam, Puerto Rico, and the Virgin Islands do not allow applicants to sit for their bar examinations, or gain admission by motion, unless they have graduated from A.B.A. accredited law schools. The District of Columbia has made an exception for graduates of foreign law schools who have also taken twenty-four hours of courses at accredited law schools. In addition, there are nine states which limit eligibility to sit for the bar examination to graduates of accredited law schools.

frivolous. There is no reported case holding the A.B.A. approval requirement to be invalid. To the contrary, the United States Supreme Court has rejected constitutional attacks upon requirements of state bars that their members be graduates of accredited law schools. *Wessel v. Pennsylvania Bd. of Law Examiners,* —— U.S. ——, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), *dismissing appeal for want of a substantial federal question,* 327 Misc.Dkt. No. 21 (Pa. Jan. 4, 1979); *In re Application of Hansen,* —— U.S. ——, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979), *dismissing appeal for want of a substantial federal question,* 275 N.W.2d 790 (Minn.1978); see generally, *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (dismissal for want of a substantial federal question is, as in *Wessel* and *Hansen,* a decision on the merits).

The American Bar Association is best suited to carry on the task of accrediting law schools in this country. A state board of bar examiners could hardly perform this important function. The first set of standards for law school accreditation was adopted at the A.B.A.'s 1918 Annual Meeting, and in 1921 the A.B.A. commenced the accreditation program. Today the A.B.A. draws upon the time and experience of law school teachers and deans, practitioners, and judges in its inspection, evaluation, and accreditation of the nation's institutions of legal learning. Law schools which have been provisionally accredited are inspected annually, and accredited schools are regularly reinspected. The standards by which the law schools are accredited are comprehensive, thorough, and contemporary. See *Approval of Law Schools: American Bar Association Standards and Rules of Procedure* (as amended, 1977).[3]

**3.** *Approval of Law Schools* notes (p. v) the objectives of the A.B.A.'s Section of Legal Education and Admissions to the Bar:

" 'The purposes of the Section shall be to consider, discuss, recommend to the Association, and effectuate measures for the improvement of the systems of pre-legal and legal education in the United States; methods for inculcating in law students the sincere regard for the ethics and morals of the profession necessary to its high calling; and means for the establishment and maintenance in the several states of adequate and proper standards of general

Sound legal education requires that the law student be exposed to, and come to appreciate, a host of complex legal issues.

" 'A good lawyer must possess a complete and workable legal education; developed through exposure to many branches of law, contacts and communication with competent and professional instructors, experience in legal research and writing, interaction with other students, and access to current and complete research materials. Clearly, these demands compel the establishment and maintenance of standards and systems for the evaluation of institutions which propose to equip new attorneys to join the legal profession.' "

*Hansen,* supra at 794–95, quoting *Rossiter v. The Law Committee of the State Bd. of Law Examiners,* Civil Action No. C–4767 (D.Colo. Aug. 26, 1975) (three-judge court), *appeal dismissed* (D.Colo. Jan. 20, 1977) (three-judge court), Slip op. at 12–13. Clearly the American Bar Association has the experience and the resources to ascertain the quality of the educational environment in America's law schools in a professional and objective fashion.

It must be clear that the resources of this Court and its Board of Law Examiners are neither sufficient nor suited to the task of "accrediting any particular law school," let alone the 170 approved law schools in this country.[4] *Appeal of Murphy,* 482 Pa. 43, 48 n. 10, 393 A.2d 369, 371 n. 10 (1978), *appeal dismissed and cert. denied sub nom. Murphy v. Pennsylvania State Bd. of Bar Examiners,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979). To accredit law schools in ad hoc proceedings would place intolerable burdens upon this Court, would yield results far less reliable than those of the A.B.A., and would invite challenges as to the quality of such

> education, legal training, and moral character of applicants for admission to the Bar, including the manner of testing their qualifications.' "

4. Of the 170 A.B.A. approved schools, only seven are Pennsylvania schools. In addition, this Court and the Board would have to maintain contact with the approximately fifty-five unaccredited schools in this country, none of which are in Pennsylvania.

ad hoc determinations.  See *Hansen, supra* at 795 (" 'It is . . . patently obvious that judicial bodies are singularly ill-equipped to bring to bear the resources and expertise necessary to conduct a case-by-case evaluation of United States and foreign law schools.' ").

The Commonwealth's "interest . . . in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' " *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975); accord, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).  Surely this special state interest is promoted by regulating admission to the bar.  Our Constitution confers that responsibility upon this Court.  Pa.Const. art. 5, § 10(c).  There is no doubt that a lawyer's legal education is the most significant element of his or her legal training.  Rule 204 provides the safest assurance of competence among the members of our Bar.

MANDERINO, Justice, dissenting.

For the reasons previously set forth by this writer, I must dissent from this Court's refusal to grant petitioner's application for admission.  *Appeal of Ferriman*, —— Pa. ——, 408 A.2d 844 (1979) (Manderino, J., dissenting opinion); *Appeal of Murphy*, 482 Pa. 43, 393 A.2d 369 (1978) (Manderino, J., dissenting opinion, joined by Larsen, J.).  Petitioner Helen B. Kartorie, like petitioner *Ferriman, supra*, graduated from Cleveland-Marshall School of Law.  Cleveland-Marshall School of Law was not accredited by the ABA at the time petitioner graduated.  For this reason, petitioner's application for admission was denied.  Petitioner successfully passed the Ohio Bar Examination and was admitted to practice before the Ohio Supreme Court.  Petitioner is presently employed as Deputy Counsel of the Department of the Navy, Mechanicsburg, Pennsylvania.  To deny petitioner's application because she graduated from a law school not accredited by the ABA is again to deprive citizens the

506

opportunity to practice in Pennsylvania and to deprive Pennsylvania consumers of competent legal services. Hence, my dissent.

LARSEN and FLAHERTY, JJ., join in this dissenting opinion.