Peter Anthony Douglas TEARE, Noel C. Reilly, Abdul Mushin Nour Al–Athari, Martine Francine Coiquaud–Guerra, Petitioners,

v.

COMMITTEE ON ADMISSIONS, Respondent.

Nos. 87–1037, 87–1392, 88–116 and 89–50.

District of Columbia Court of Appeals.

Argued Sept. 18, 1989.
Decided Nov. 3, 1989.

Peter Anthony Douglas Teare, pro se.

Robert M. Clark, Washington, D.C., for petitioner Reilly.

Adrian L. Steel, Jr., Washington, D.C., for petitioner Al–Athari.

Peter J. Kadzik, Washington, D.C., for petitioner Coiquaud–Guerra.

Jerome Nelson for respondent. Lloyd N. Moore, Jr., Washington, D.C., filed a brief for respondent.

Before NEWMAN, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Petitioners here are four resident alien attorneys, primarily educated in foreign law schools, who have been admitted to the bar of an American state within the past five years[1] and now seek admission without examination to the bar of the District of Columbia. All four petitioners passed the bar examination of the other jurisdiction with a Multistate Bar Examination ("MBE") score of at least 133. Thus, they have met one of the requirements of our Rule 46(c)(3)(ii) providing for admission without examination of recent admittees to the bars of other American jurisdictions.[2]

---

1. Petitioners Teare and Reilly received their primary legal education in Great Britain, Al–Athari in Iraq, and Coiquaud–Guerra in France. Petitioner Teare is a member of the bar of Colorado (admitted in 1986), Reilly and Coiquaud–Guerra of New York (admitted in 1985 and 1987 respectively), and Al–Athari of Pennsylvania (admitted in 1987).

2. At the time these petitions were filed, D.C. App.R. 46(c)(3), governing the requirements for admission without examination of members of the bar of other jurisdictions, stated in pertinent part:

> Admissions requirements. Any person may, upon proof of good moral character as it relates to the practice of law, be admitted to the Bar of this court without examination, provided that such person:
>
> . . . .

> (ii)(A) Has been awarded a Juris Doctor degree or its equivalent by a law school which, at the time of awarding the degree, was approved by the American Bar Association, and
> (B) Has been admitted to the practice of law in any state or territory of the United States upon the successful completion of a written bar examination and has received a scaled score of 133 or more on the Multistate Bar Examination which was taken as a part of such examination. . . .

This court amended Rule 46(c)(3)(ii)(A) on May 9, 1989. In its current form, this portion of the rule requires an applicant for admission without examination to have been awarded "a J.D. or LL.B. degree by a law school which, at the time of the awarding of the degree, was approved by the American Bar Association."

However, each petitioner is faced with the obstacle presented by the additional requirement of the rule that the applicant have "been awarded Juris Doctor degree or its equivalent by a law school which, at the time of awarding the degree, was approved by the American Bar Association."

Although not all of the petitioners are identically situated, they present various constitutional grounds that they assert compel their admission.[3] Alternatively, they ask this court to consider the facts of their individual cases and waive the requirement of graduation from an ABA approved school. Two of the petitioners, Al-Athari and Coiquaud–Guerra, claim that in any event they meet that requirement as set forth in the provisions of the Rule.

## I.

Petitioners Al–Athari and Coiquaud–Guerra contend that they have satisfied the requirements of Rule 46(c)(3)(ii) and that the Committee on Admissions of the District of Columbia Bar (the "Committee")[4] interpreted the rule erroneously in denying

their applications for admission. The argument turns in part on the rules governing the conditions under which applicants are eligible to sit for the D.C. bar examination and seek admission in that manner. Under our Rule 46(b), petitioners note, candidates are eligible to take the D.C. bar examination *either* if they earn a J.D. from an ABA approved law school *or* if they complete twenty-four semester hours at an ABA approved law school (after earning a law degree at a school which is not ABA approved).[5] In petitioners' view, this demonstrates that the Rules themselves recognize the equivalence of these two different educational approaches. As such, they argue that completion of twenty-four semester hours at an ABA approved law school, combined with graduation from a law school not approved by the ABA, is the "equivalent" of a Juris Doctor degree for purposes of admission without examination under Rule 46(c)(3)(ii). Since both Al–Athari and Coiquaud–Guerra have completed at least twenty-four credit hours at ABA approved schools,[6] they claim to have satisfied the

Rule 46(c)(3)(ii) is normally applicable only to applicants who have been members of another American bar for fewer than five years. Rule 46(c)(3)(i) permits an applicant who has been an active member in good standing of another state's bar for a period of five years or more immediately preceding the filing of the application to be admitted solely upon proof of good moral character. No educational requirement is imposed, nor is the applicant's performance on the other state's examination (if taken at all) relevant. Thus, notwithstanding the outcome of this proceeding, each petitioner here will within several years be eligible to apply for admission to our bar in any event. *See supra* note 1.

3. Not all petitioners have formally presented the full range of constitutional arguments, but for purposes of this proceeding we treat them as having done so.

4. This Committee, established by our Rule 46, generally supervises the bar admission process set forth in that Rule. The Committee files with this court a motion to admit those successful applicants of the examination, or a certification of attorneys for admission without examination, following completion of the character and fitness study. D.C.App.R. 46(g)(1).

5. At the time of petitioners' applications, Rule 46(b) stated, in pertinent part:

(3) Proof of legal education. An applicant who has graduated from a law school that at the time of graduation was approved by the American Bar Association or who is certified by the dean of such law school as being eligible for graduation will be permitted to take the bar examination....

(4) Law study in law school not approved by the ABA. An applicant who graduated from a law school not approved by the American Bar Association may be permitted admission to an examination only after receiving at least 24 semester hours of study in the subjects tested in the bar examination in a law school that at the time of such study was approved by the American Bar Association.

Rule 46(b)(4) was also amended on May 9, 1989. Under the new provisions, an applicant who has graduated from a non-ABA approved law school must complete "at least 26 semester hours of study in the subjects tested in the bar examination" at an ABA approved law school before becoming eligible to take the D.C. bar examination.

6. From January 1983 until August 1984, Al–Athari took and passed twenty-six credit hours of law courses at the Delaware Law School, an ABA approved school, although he received no degree. Coiquaud–Guerra completed twenty-four credit hours at Southern Methodist University and was awarded the Master of Laws (International and Comparative Law) degree in

requirement of Rule 46(c)(3)(ii)(A) that they have "been awarded a Juris Doctor degree or its equivalent by a law school which, at the time of awarding the degree, was approved by the American Bar Association." Additionally, petitioner Al–Athari argues that since he relied on this reasonable interpretation in opting to take the Pennsylvania, and not the District of Columbia, bar examination, the claimed ambiguity in the term "equivalent" in Rule 46(c) should be resolved in his favor.[7]

■ We find these arguments unpersuasive. The fact that petitioners Al–Athari and Coiquaud–Guerra [8] may possess the educational training required of graduates of non-ABA approved law schools *to be permitted to take* the D.C. bar examination under Rule 46(b)(4) does not mean they have a degree which is equivalent to a J.D. from an ABA approved law school for purposes of admission without examination under Rule 46(c).[9] Although the two different educational paths governed by Rule 46(b) both satisfy D.C. bar *examination* eligibility requirements, this does not mean that the two are equal ways to gain the

educational qualifications required for admission without examination to the D.C. Bar. The fact that candidates who have not graduated from ABA approved law schools must be subjected to the rigors of the District of Columbia bar examination, graded according to our standards, provides an added safeguard that they are so qualified.[10] That is why a legal education which is equivalent for purposes of admission by examination is not equivalent for purposes of admission without examination.

We also reject petitioner Al–Athari's claim that he relied on a reasonable interpretation of the rules when, thinking he could waive into the D.C. Bar, he decided to take the Pennsylvania bar examination. We do not view Rule 46(c)(3)(ii)(A) as ambiguous in this regard. Moreover, Al–Athari made no inquiries to the Committee about the interpretation of Rule 46(c) before choosing to take the Pennsylvania exam.[11]

■ Petitioner Coiquaud–Guerra also argues that her acceptance into Southern

Spring 1986. We note that petitioner Reilly received the degree of Master of Laws in Trade Regulation from the New York University School of Law in July 1988, having taken approximately twenty-four credit hours there and at Georgetown University Law Center, and having audited classes at Iowa. Although he does not argue that he thus meets the requirements of Rule 46(c)(3)(ii)(A), any such assertion would fail for the reasons set forth in this opinion.

7. Al–Athari points to the recent amendment of Rule 46(c)(3)(ii)(A), *see supra* note 2, to buttress his claim that the phrase "Juris Doctor or its equivalent" is ambiguous. He claims that no revision would have been necessary had the rule been unambiguous to begin with. However, whatever ambiguity may have existed in the prior wording does not extend to the interpretation made by Al–Athari.

8. It is not clear whether Coiquaud–Guerra's LL.M. program, which included courses such as International Trade and Investment, Perspectives on the American Legal System, International Banking and Finance, and Legal Problems in International Business, would meet the requirement of the then existing rule that a candidate earn his or her 24 ABA approved semester hours in subjects tested in the bar examination. The same may be said of Reilly's courses.

9. In effect, petitioners' argument is that the rule must be read as if it stated that an applicant was eligible for admission without examination if he or she "has been awarded a Juris Doctor degree by a law school which was approved by the American Bar Association, or its equivalent." However, the plain meaning of the rule as in fact written is that the phrase "or its equivalent" is qualified by the requirement that the equivalent degree itself be issued by a law school approved by the ABA.

10. If we accepted petitioners' argument that Rules 46(b)(3) and 46(b)(4) established equivalence for purposes of admission without examination, then graduates of American non-ABA approved law schools who pass another state's bar exam would also be able to waive into D.C., provided that they take the requisite twenty-four semester hours of ABA approved schooling. Such a result is plainly not contemplated by the rules.

11. Even if the rule was ambiguous, as claimed by Al–Athari, only principles of estoppel, such as reliance on a representation by the Committee on Admissions about the meaning of the rule, would avail him in the face of a subsequent contrary interpretation.

Methodist University's LL.M. program demonstrates that she already has at least the equivalent of a J.D. degree. She attaches to her petition an extract from the Southern Methodist University catalogue, which states that as a prerequisite to admission to its International and Comparative Law LL.M. program, an applicant must "be a graduate of a foreign law school of standing comparable to those approved by the Section of Legal Education of the American Bar Association." She thus claims she possesses an ABA approved law degree equivalent to, if not more advanced than, a J.D.

■ This argument is also unpersuasive. The fact that a foreign law school is of comparable standing to an ABA approved school does not establish that it meets the educational requirements imposed by the ABA for accreditation, or that its students receive training in areas they must master to practice law competently in this jurisdiction. Acceptance into and completion of an LL.M. program alone cannot establish that a candidate has been awarded by an ABA approved law school a degree which is the equivalent of a J.D. awarded by an ABA approved school.[12]

## II.

We are also presented with several constitutional arguments, all of which we reject.

■ 1. *Full Faith and Credit.* Petitioners first note that the highest courts of the jurisdictions which admitted them have effectively determined that their education is equivalent or substantially equivalent to that provided by an ABA approved law school for the purpose of admission to the bar.[13] Those determinations, they contend, must be followed in this jurisdiction under the full faith and credit clause of article IV of the U.S. Constitution. Petitioners misread the effect of that clause.

First, the "substantial equivalence" of petitioners' education is not a relevant question in interpreting our Rule 46(c), which focuses on the equivalence of degrees, not of legal educations. Even if this

---

**12.** Petitioners' situation is totally different from that involved in *Hicks v. District of Columbia Committee on Admissions,* No. 88–1002 (D.C. May 23, 1989). In that proceeding, this court approved a recommendation of the Committee on Admissions to admit without examination a candidate who had completed 86 semester hours of legal study at ABA approved law schools. Petitioner had received a B.A. from the University of North Carolina in 1972 and a law degree from a university in Brazil in 1979. Then, from 1983–85, she completed two years of study in a J.D. program at an ABA approved school in North Carolina. When her husband was transferred to the D.C. area, she completed her legal education by enrolling directly in the LL.M. program at the Washington College of Law at American University, also an ABA approved school. Thus, while she received the LL.M. degree in 1987, she never was formally awarded a J.D. Although originally unwilling to admit petitioner, the Committee subsequently informed this court that in its view, the applicant's legal education "would satisfy the requirements for a Juris Doctor degree at ABA approved law schools," and recommended her admission without examination (on the basis of her performance on the bar examination of the Pennsylvania Bar, to which she had been admitted). We accepted the Committee's recommendation and permitted the applicant to apply for admission without examination. Although our formal order termed the action a waiver, it was

in effect an acceptance of the Committee's interpretation of the "or equivalent" provision in the then existing rule.

The *Hicks* case also differs from petitioners' because the Committee, in making the interpretation it did in that instance, never had to assess whether the law schools Hicks attended satisfied the educational standards we require for admission to practice in the District of Columbia. As is true when it considers the routine case of a candidate with a J.D. from an ABA approved law school, the Committee in *Hicks* was able to rely on the ABA's evaluation of the scope and quality of the instruction Hicks had received. Here, however, the Committee could not rely on any such evaluation of the petitioners' primary law school training. As a result, it had no basis for adopting the interpretation of Rule 46(c)(3)(ii) pressed by petitioners.

**13.** According to petitioners, Colorado and New York permit applicants to sit for the bar examination if their foreign legal training is "substantially equivalent" to that provided by an ABA approved school. Pennsylvania allows a graduate of a foreign law school to sit for the bar if the foreign graduate is admitted to practice law in the foreign country and has completed twenty-four credit hours in an ABA approved school in a number of designated subjects, a requirement somewhat similar to that contained in our Rule 46(b)(4). *See supra* note 5.

court were bound by the determination of the courts of Colorado, New York, and Pennsylvania that petitioners' legal education was substantially equivalent to that offered at an ABA approved law school, our rules do not permit admission to the bar on the basis of an education "substantially equivalent" to that received at an ABA approved law school. In other words, the petitioners have brought us answers by courts of other jurisdictions to a question which the rules governing admission to practice of law in the District of Columbia do not ask.

Second, we are not bound by determinations of courts of other jurisdictions in this instance. The full faith and credit clause does not apply where, as here, there is no risk of conflict with or insult to another state. In *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), the Court explained that although the Constitution requires state courts to give full faith and credit to the judgments of other courts, this is not true for matters of local and statutory law.

> In the case of local law, since each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders, the full faith and credit clause does not ordinarily require it to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and events.

*Id.* at 436–37, 64 S.Ct. at 212 (citations omitted). More recently, the Court reiterated that the "Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Sun Oil Co. v. Wortman*, 486 U.S.

717, 108 S.Ct. 2117, 2122, 100 L.Ed.2d 743 (1988) (citation omitted). Since the system of rules a state court adopts to govern admission to the bar is matter of local policy, and not a judgment on the merits in a case or controversy, the District of Columbia need not extend full faith and credit to assessments made by the courts of other states of petitioners' legal training. *See In re Application of Hansen*, 275 N.W.2d 790, 798 (Minn.1978), *appeal dismissed*, 441 U.S. 938, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979) (refusing to defer to other state's assessment of a bar applicant's educational qualifications); *Application of Schatz*, 80 Wash.2d 604, 611, 497 P.2d 153, 157 (1972) (en banc) (noting that regulation of qualifications for admission to the bar is "peculiarly a domestic affair" not subject to full faith and credit).

■ 2. *Equal Protection.* It is asserted that our rule creates a classification which discriminates against foreign-trained law students. This is characterized as discrimination based "indirectly" on the basis of national origin. Because this is a suspect classification, it is argued, the regulation is subject to strict scrutiny, and no compelling state interest has been demonstrated as required by a strict scrutiny test. *See In re Griffiths*, 413 U.S. 717, 721–22 & n. 9, 93 S.Ct. 2851, 2854–55, & n. 9, 37 L.Ed.2d 910 (1973).

The fallacy of petitioners' assertion is in its premise. Rule 46(c)(3)(ii)(A), of course, is facially neutral and applies with equal force to all individuals regardless of origin. Although it is claimed that the distinction has a discriminatory *impact* on foreign-educated students, no evidence is provided in support of this assertion. Indeed, what evidence there is suggests the opposite; that is, that graduates of non-ABA approved American law schools are the group more greatly affected.[14]

---

14. In February 1987 and July 1987, ninety-one graduates of non-ABA approved law schools took the D.C. bar examination. Of these, only 38 were graduates of foreign law schools; the other 53 were graduates of U.S. non-accredited schools. *See* D.C. Bar Admission Rules Study Committee ("Isbell Committee"), Final Report 36 (Feb. 29, 1988). While these statistics do not

identify candidates, such as petitioners here, who do not apply to take the D.C. bar examination, they provide some indication that the rules governing graduates of non-ABA approved schools do not disproportionately affect foreign-trained students. Likewise, it appears that approximately 15 jurisdictions, perhaps most notably California, permit initial bar applications

Under a conventional rational basis analysis, *see New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam), the requirement that applicants who seek admission without examination graduate with a J.D. from an ABA approved law school has a rational connection with a legitimate state purpose. Such a requirement bears a rational connection to the applicant's fitness to practice law which comports with the District's substantial interest in establishing standards for licensing of attorneys who will practice in the jurisdiction. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).[15] Because the D.C. bar examination, graded according to our standards, provides an added assurance of competency, it is also rational to permit applicants who meet the requirements of Rule 46(b)(4) to seek admission by taking that examination, while at the same time not allowing such applicants to gain admission without examination.

■ 3. *Privileges and Immunities.* It is also asserted that the practice of law is a "privilege" protected by the privileges and immunities clause of article IV, section 2 of the Constitution.[16] Petitioners contend that Rule 46(c)(3) places an "unreasonable burden" on non-U.S. trained lawyers, and thus violates the privileges and immunities clause. We reject this challenge also.

The privileges and immunities clause of article IV, section 2, serves to establish "a norm of comity ... that is to prevail among the States with respect to their treatment of each other's residents." *Hicklin v. Orbeck,* 437 U.S. 518, 523–24, 98 S.Ct. 2482, 2486, 57 L.Ed.2d 397 (1978) (citation omitted). This provision prohibits a state " 'from discriminating against citizens of other states in favor of its own.' " *Galahad v. Weinshienk,* 555 F.Supp. 1201, 1206 (D.Colo.1983) (quoting *Hague v. C.I.O.,* 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423 (1939)).

The District of Columbia bar admission rules do not offend any norm of comity. Provided that resident and non-resident applicants are required to meet the same educational, professional, and personal qualifications, the privileges and immunities clause does not enjoin a state from prescribing the qualifications that applicants must possess for admission to legal practice. *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 283 n. 16, 105 S.Ct. 1272, 1278 n. 16, 84 L.Ed.2d 205 (1985). Since the Rule 46(c) requirement of ABA accreditation applies whether or not applicants are citizens of the District, the requirement is in no sense a residency requirement. The requirement of Rule 46(c) that an applicant who seeks admission to the D.C. Bar without examination must have a J.D. or its equivalent from an ABA approved law school does not discriminate against citizens of other states or favor D.C. residents. It applies equally to D.C. resident and non-D.C. resident alike. Rule

from American candidates whose U.S. legal study was at certain schools not approved by the ABA. SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR, AMERICAN BAR ASSOCIATION, A REVIEW OF LEGAL EDUCATION IN THE UNITED STATES, FALL, 1988. LAW SCHOOLS AND BAR ADMISSION REQUIREMENTS 75–82 (1989). Thus, our rule limiting admission without examination, at least for those newly admitted in another jurisdiction, to graduates of ABA approved schools seems to apply to many U.S.-trained, as well as foreign-trained, law students.

In any event, see generally *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

**15.** In so holding, we join a long line of cases from various jurisdictions which have upheld as reasonable the requirement that a bar applicant graduate from an ABA approved law school.

See, *e.g., Ostroff v. New Jersey Supreme Court,* 415 F.Supp. 326, 329 (D.N.J.1976); *Application of Urie,* 617 P.2d 505, 507 (Alaska 1980); *Rosenthal v. State Bar Examining Committee,* 116 Conn. 409, 417, 165 A. 211, 214 (1933); *In re Hansen, supra,* 275 N.W.2d at 793–95; *Petition of Batten,* 83 Nev. 265, 428 P.2d 195 (1967); *Henington v. State Board of Bar Examiners,* 60 N.M. 393, 395–98, 291 P.2d 1108, 1109–11 (1956); *Appeal of Kartorie,* 486 Pa. 500, 406 A.2d 746, 747 (1979).

**16.** "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2.

Even if there were merit in petitioners' argument with respect to the clause, it would not avail them. The clause by its terms is not applicable to aliens.

46 thus does not run afoul of the article IV privileges and immunities clause.

■ 4. *Right to Travel.* Finally, it is asserted that Rule 46(c) imposes an unconstitutional inhibition on interstate migration for a class of lawyers whose education and training has resulted in their admission to the bar of a sister state.

It is true that a rule which unduly restricts the fundamental right of interstate travel may violate the equal protection clause of the fourteenth amendment. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). However, the Supreme Court has found violations of the right to travel only in cases where a state law, usually through a durational residency requirement, denies benefits to nonresidents which it extends to residents. *See, e.g., Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (overturning durational residency requirement for free non-emergency medical care); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (overturning durational residency requirements for voting). Such laws create impermissible distinctions between long-term residents of and recent arrivals to a state.

Here, however, we have no such rule. The ABA approved law school requirement of Rule 46(c)(3) creates no distinction between residents and non-residents and imposes no District of Columbia residency requirement. Accordingly, the requirement that an applicant to the D.C. Bar for admission without examination earn his or her law degree at an ABA approved school does not violate the fundamental right to travel.[17]

### III.

■ Finally, petitioners seek a waiver of the requirements of Rule 46(c). Citing *Kennedy v. Educational Testing Service, Inc.*, 393 A.2d 523, 525 (D.C.1978) and *Feldman v. Gardner*, 213 U.S.App.D.C. 119, 123, 661 F.2d 1295, 1299 (1981), *vacated*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), they contend that this court has the legal authority to grant waivers of the regulations governing bar membership. Petitioners base their requests for waivers on the ground that their formal legal training and subsequent experience make them at least as qualified to join the D.C.Bar as graduates of ABA approved law schools.

The decision whether to consider waivers presents a classic rules versus standards debate—whether the certainty and evenhandedness of a clear, bright-line rule justifies the possibility that the rule may work imperfectly in some cases. Without engaging in an investigation of the legal education received by the petitioners in these cases, we decline to depart from our longstanding policy, first announced in November 1977,[18] not to consider waivers to the ABA approved law school graduation requirement on a case by case basis or otherwise. As some other courts have noted,[19] the task of making separate subjective evaluations of each applicant's training and education could be time consuming, financially burdensome, and could impose a serious administrative burden on both this court and the Committee. Such a determination would be even more difficult to make when confronted, as in these appeals, with law schools in foreign countries whose legal systems may be very different from our own. *See Adams, supra* note 19, 102

---

**17.** Other courts have similarly concluded that the requirement that a candidate for the bar have graduated from an ABA approved law school entails no violation of the right to travel. *See, e.g., Moore v. Supreme Court of South Carolina*, 447 F.Supp. 527, 531 (D.S.C.1977), *aff'd*, 577 F.2d 735 (4th Cir.1978), *cert. denied*, 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978); *Urie, supra* note 15, 617 P.2d at 509; *Hansen, supra*, 275 N.W.2d at 796.

**18.** *See Feldman, supra*, 213 U.S.App.D.C. at 123, 661 F.2d at 1299.

**19.** Several courts have discussed the administrative burdens associated with case by case evaluations of the educational qualifications of bar applicants. *See, e.g., Urie, supra* note 15, 617 P.2d at 508; *Florida Board of Bar Examiners; In re Hale*, 433 So.2d 969, 971–72 (Fla.1983); *Hansen, supra*, 275 N.W.2d at 797; *Matter of Adams*, 102 N.M. 731, 732, 700 P.2d 194, 195 (1985); *Kartorie, supra* note 15, 486 Pa. at 504, 406 A.2d at 748; *Schatz, supra*, 497 P.2d at 156. Of course, not all the authority is in accord with our position. *See supra* note 13 (discussing the New York and Colorado bar admission rules for foreign-trained law students).

N.M. at 732, 700 P.2d at 195. Furthermore, any case by case consideration of waivers invites the risk of disparate treatment of similar cases, and thus carries its own potential for unfairness. *See Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174, 1183 (D.Nev.1980) (inconsistent granting of waivers of a requirement that bar candidates graduate from an ABA approved law school may violate equal protection guarantees).

Finally, we point out that by no means are our doors closed to petitioners. We deal here solely with our rule relating to admission to our bar without examination of attorneys newly admitted in other jurisdictions, which we permit under more liberal rules than all but one or two jurisdictions.[20] Each petitioner here will be able to waive in without examination within the next several years. *See supra* note 2. They need not even wait that long if willing to meet the relatively modest educational requirement of our Rule 46(b)(4) (if they have not already done so) and to take our own D.C. bar examination.[21]

Accordingly, we deny the petitions to waive the requirement of Rule 46(c)(3)(ii).[22]

*So ordered.*

**20.** As of May 1987, only 29 states and the District of Columbia admitted attorneys on motion. Of those, only the District of Columbia and Nebraska admitted licensed attorneys without prior practice. *See* Advisory Committee ("Kay Committee"), An Evaluation of the District of Columbia Bar Admission Process 51 (May 1987).

According to a later 1989 study, only 25 states and the District of Columbia now admit attorneys on motion. That study also indicates that Colorado, along with the District of Columbia and Nebraska, will admit new attorneys on motion. However, for attorneys with fewer than five years of prior experience, Colorado extends the admission without examination option only to applicants with a scaled MBE score of 152 or higher. *See* SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR, AMERICAN BAR ASSOCIATION, COMPREHENSIVE GUIDE TO BAR ADMISSION REQUIREMENTS, 1989, at 28–29, 30 (1989).

**21.** Although it does not appear that any petitioner so qualifies, our Rule 46(c) also provides that

certain foreign-trained lawyers may be admitted in D.C. as Special Legal Consultants. A prerequisite is that one "has been admitted to practice (or has obtained the equivalent of admission) in a foreign country, and has engaged in the practice of law in that country, and has been in good standing as an attorney or counselor at law (or the equivalent of either) in that country, for a period of not less than five of the eight years immediately preceding the date of application." D.C.App.R. 46(c)(4)(A)(1). Such Special Legal Consultants are limited in the nature of the law they may practice. *See* D.C.App.R. 46(c)(4)(D).

**22.** The decision expressed in this opinion to adhere to the policy not to consider waivers of any requirement in our rules with respect to education in an ABA approved law school, absent truly exceptional circumstances such as in *Hicks, supra* note 12, has the adherence of all the active members of this court.