393 A.2d 369

**Appeal of Edward M. MURPHY, II, from the Decision of the State Board of Law Examiners.**

**Application of Thomas Sylvester ACKER for Admission to the Bar of the Supreme Court of Pennsylvania.**

Supreme Court of Pennsylvania.

Oct. 5, 1978.

Edward M. Murphy, II, Dunmore, David H. Acker, New Castle, for appellant.

Susan L. Anderson, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM.

For many years this Court, exercising its inherent right to determine the conditions of admission to the bar of this state,[1] has insisted on two complementary requirements: *one,* that an applicant for admission be a graduate both of an accredited college and of an accredited law school; and *two,* that the applicant take and pass the bar examination administered by the Pennsylvania State Board of Law Ex-

1. *See* Art. V, Sec. 10(c) of the Constitution of Pennsylvania.

aminers (an arm of this Court). These two requirements have been insisted upon because of the belief that neither alone was sufficient. The learning process of attending a law school was felt to need the capstone of an examination administered under the supervision of the admitting authority,[2] and the examination in turn was felt to need the underpinning of a competent legal education.

For many years the rule of our Court relating to the legal education requirement said only that the institution should be "approved"; in practice, the Court looked to and relied upon the American Bar Association's accreditation list as its guide in determining whether that requirement had been met. In 1971 this practice was made explicit, the rule stating that to qualify for the bar examination an applicant "shall have completed the study of law in a law school accredited by the American Bar Association." 441 Pa. xxx.[3]

In 1977 the Pennsylvania bar admission rules were revised generally, and the former rule specifying accreditation was incorporated into Rule 203 of the new Pennsylvania Bar Admission Rules, 471 Pa. lxxix. To the adoption of these

2.  The so-called "diploma privilege" is recognized in only five states— Mississippi, Montana, South Dakota, West Virginia and Wisconsin. In those jurisdictions a written examination for applicants with a degree from a recognized law school located within the state is dispensed with.

   In 1971 the Council of the Section of Legal Education and Admissions to the Bar of the American Bar Association and the Board of Managers of the National Conference of Bar Examiners joined in a statement "concerning the propriety of examination by public authority before admission to practice." In this statement the view, first expressed in 1921 by the American Bar Association, was reaffirmed that there should be examination by public authority as a condition to permission to practice law.

3.  Because the ABA did not undertake to evaluate law schools situated outside of the United States, and because this Court was receiving applications from graduates of foreign law schools, our rule was amended in 1976 to allow a person to sit for the bar examination if he or she "shall have acquired a legal education which in the opinion of the State Board is the equivalent" of the education received in an ABA approved school. This provision was not intended to apply to schools located within the geographical area encompassed by the accreditation activities of the ABA. The current form of the rule is to be found in Pa.B.A.R. 203(2) and 205. 471 Pa. lxxix.

46

new rules a dissenting opinion was filed by our brother MANDERINO. *Ibid.* at xcv.

■ We now have before us two appeals[4] from actions by the Board of Law Examiners based on the accreditation requirement. One appeal, by Edward M. Murphy, II, is from the refusal of the Board to allow him to sit for the bar examination.[5] The other, by Thomas Sylvester Acker, is from the refusal of the Board to certify the applicant's eligibility to be admitted on motion under the rule of comity which recognizes five or more years of practice in a reciprocating sister state, and a certificate of good standing by the supreme court of that state, as sufficient to warrant admission to the bar of this Court without examination. The point in common in the two cases is that in Pennsylvania both admission to the bar examination and admission to the bar "on motion" under the comity rule are premised upon the applicant possessing a law degree from an approved law school. Murphy graduated from Western State University College of Law of Orange County, Fullerton, California[6]; Acker graduated in 1955 from Youngstown State University

4. Under Pa.B.A.R. 222, effective in October, 1977, an aggrieved applicant should now petition this Court for judicial review of the determination of the Board. The present parties have used the prior terminology of "appeal", which we have treated as substantial compliance with the rule.

5. This is Mr. Murphy's second appearance before this Court. He previously applied to the Board for permission to sit for the February 1977 bar examination, on a record identical to the one presented here, and his application was denied. He appealed from that denial to this Court, and his petition was denied by this Court on December 23, 1977, Mr. Justice MANDERINO dissenting. No. 317 Misc. Docket No. 21 (1977). Murphy then brought an action in the United States District Court for the Eastern District of Pennsylvania, alleging that this Court's requirements, noted above, denied him equal protection of the laws. The action was dismissed on March 29, 1977, for failure to state a claim on which relief can be granted, and no appeal was taken. *Murphy v. State Board of Law Examiners*, 429 F.Supp. 16 (E.D.Pa.1977).

6. Murphy transferred to Western State from Armstrong College of Law, Berkeley, California. Armstrong also is a non-accredited institution.

School of Law, Youngstown, Ohio.[7]  Neither institution is accredited under our rules because neither has received ABA accreditation and it was for this reason that the Board took the action it did in each case.  We affirm the decisions of the Board.

The dissenters apparently do not quarrel with the philosophy that a good legal education, not merely passing a state administered bar examination, is a reasonable and beneficial condition for admission to the bar.  The disagreement seems to be with the selection of the American Bar Association as the accrediting agency; more precisely, with what is seen to be an unconstitutional delegation of judicial authority to a non-governmental body such as the ABA.[8]  Mr. Justice MANDERINO finds basic flaw in the absence of any standards to guide the ABA in its delegated functions.[9]  He would therefore permit graduates of an unapproved school to seek admission in this state, "either individually or by their schools."  In our view, this argument is misplaced.

In the first place, this Court has not "delegated" any judicial function to the ABA.  The admission of a person to practice law in this state is and always has been a judicial

7.  This institution was at one time (apparently during the 1950s) approved by the League of Ohio Law Schools and on this basis its graduates were for a time accepted for admission to the bar by the Supreme Court of Ohio.  The ABA has not been requested to inspect the school since 1956, and the Pennsylvania Board of Law Examiners has been informed that the school is out of existence.

8.  The dissenting opinion does not find fault with our long-established requirement that an applicant shall have received an undergraduate degree from an accredited college or university.  *See* Pa.B.A.R. 203(1).  The rule does not specify the accrediting agency, but this Court has always accepted the accreditation of the recognized regional college and university associations which act in this regard.

9.  Mr. Justice MANDERINO, in his dissenting opinion, speaks also of the "glaringly apparent" inequity of the Rule requiring accreditation.  The nature of the inequity is not spelled out, presumably because it is "apparent."  It is unclear to us, however, wherein this inequity lies.  It surely cannot be found in the fact that, as appellant alleges, the California Committee of Bar Examiners has seen fit to accredit Murphy's school within California, and that this has been accepted as sufficient by several other California state groups, other proprietary law schools and certain federal departments.

function, exercised now exclusively by the Supreme Court, with the aid of the State Board of Law Examiners. As explained at the outset, we have chosen to make a legal education one of the pre-conditions of seeking admission to our bar whether through the taking of the bar examination or recognition of the five-year practice equivalent in a reciprocating sister state. We could have decided to determine the adequacy of the legal education of an applicant through our own investigative machinery. Even Mr. Justice MANDERINO, however, recognizes that this would be "very impractical." [10] 471 Pa. at xcvii. Instead, Pennsylvania, like every other state in the union, has chosen to avail itself of the results of the ABA accreditation procedure, and accepts and adopts the ABA listing.[11]

The ABA's long-standing concern with the quality of legal education in the United States needs no documentation here.[12] This concern is expressed primarily through the Association's Section of Legal Education and Admission to

10. In 1975 the chairman and a member of the Pennsylvania State Board of Law Examiners accompanied the accreditation committee of the ABA on its three day inspection of a law school, several of whose students had theretofore been denied permission to take the Pennsylvania Bar examination, and which had applied for accreditation. The Chairman, Desmond J. McTighe, Esq., reported that this "experience convinced us that we could not possibly discharge the burden of accrediting any particular law school, and that this was a professional job which had to be entrusted to an impartial inspection committee of law school Professors and Deans." (It should be added that the inspection teams include qualified and experienced practitioners and judges as well as legal educators.) Letter dated April 26, 1978 from Desmond J. McTighe, Esq. to Justice Thomas W. Pomeroy, Jr., a member of this Court.

11. We are informed that there are minor modifications in a few states. Thus New York requires an applicant to have been in resident study as a full-time student for at least 96 weeks, as opposed to the ABA's 90 weeks; the Indiana Supreme Court specifies about two-thirds of an applicant's law school curriculum, more than does the ABA; North Carolina, so we are informed, does not automatically accept a school as approved in that state immediately upon its receipt of ABA accreditation.

12. See Harno, Legal Education in the United States (1953); Sullivan, The Professional Association and Legal Education, 4 Journal of Legal Education 401 (1952).

the Bar,[13] and it is the Council of this Section which has operating responsibility for the Association's program of accreditation. A law school is approved by the ABA upon application of the school and after a finding that it offers a sound program of legal education that complies with the ABA's Standards for the Approval of Law Schools.[14] Approval is by action of the House of Delegates of the Association.[15]

In the second place, the acceptance of the American Bar Association's findings is in no way arbitrary or capricious. That Association is recognized by the United States Commissioner of Education, Department of Health, Education and Welfare, as a "nationally recognized accrediting agency." It is also so recognized by the National Commission on Accrediting. Similarly the Association of American Law

13. The objective of improvement of pre-legal and legal education is stated in Article I, Sec. 3 of the By-laws of the section as follows:
"The purposes of the Section shall be to consider, discuss, recommend to the Association, and effectuate measures for the improvement of the systems of prelegal and legal education in the United States; methods for inculcating in law students the sincere regard for the ethics and morals of the profession necessary to its high calling; and means for the establishment and maintenance in the several states of adequate and proper standards of general education, legal training, and moral character of applicants for admission to the Bar, including the manner of testing their qualifications."

14. The ABA Standards specify, in brief, that a law school's program must require at least 80 semester hours of work completed in not less than 90 weeks by a full-time student and 120 weeks by a part-time student, thus assuring a minimum "quantity" of legal education. Quality of schools is measured by a number of factors, such as admissions policies, number and qualifications of full-time faculty, size of book collection, study spaces and other aspects of physical plant and on-the-scene observation of teaching and other faculty activities. Approval is granted to law schools without regard to whether they are state related, parts of a private university, or proprietary in nature.

15. The House of Delegates granted provisional approval to four law schools at its meeting in February, 1978: Whittier College, School of Law, Los Angeles, California; Lewis University College of Law, Glen Ellyn, Illinois; Pace University School of Law, White Plains, New York; Yeshiva University, Benjamin N. Cardozo School of Law, New York, New York.

Schools, membership in which, as defined in that Association's by-laws, is itself recognized as an important accrediting accomplishment, acknowledges that for a law school's degree to be accepted nation-wide as satisfying the requirements of the bar admission authorities, ABA approval is essential.[16]

With this kind of acceptance by qualified officials and organizations, it seems wide of the mark indeed to inveigh against the ABA approval process because there are no standards to guide it. *See* dissenting opinion of Mr. Justice MANDERINO to the adoption of the Bar Admission Rules, 471 Pa. xcv at xcvii (1977), quoted in his *Murphy* dissent, *infra*, 393 A.2d at 376. Mr. Justice MANDERINO overlooks that the ABA has itself developed and adopted standards and rules of procedure and that these are printed and distributed widely to law schools, universities, libraries, boards of bar examiners, professional groups and others concerned with legal education.[17] Our adoption of the results of the ABA accreditation process carries with it an endorsement of the standards which the ABA has promulgated for the guidance of itself and the institutions and students involved.[18]

While no reason is given in the dissenting opinion for this Court to extend recognition to a law school not approved by the ABA, the idea that we should be open to so doing is implicit therein. Some states do indeed recognize schools not approved by the ABA, but invariably, with one excep-

---

**16.** Source: Professor Millard H. Ruud, Executive Director of the Association of American Law Schools, Washington, D. C.

**17.** *See* the pamphlet "Approval of Law Schools—American Bar Association Standards and Rules of Procedure," *as amended*, 1977. The ABA also compiles and issues a summary of the interpretations which have been rendered relative to the ABA Standards. *See* ABA Memorandum 7778–27 dated February 1, 1978 sent to Deans of ABA approved law schools.

**18.** In the early 1970's the Pennsylvania Board of Law Examiners carefully reviewed the ABA accreditation system and "concluded that their standards and procedures appeared fair and thorough and that we could [continue to] rely upon them." Letter from Desmond J. McTighe, Esq., *supra* note 10.

tion known to us, this is with reference to schools located in the particular state.[19] Pennsylvania is in the fortunate position of having each of the six schools situated within its borders [20] fully approved by the ABA, so there is no temptation to relax standards in deference to local pressures. The exception noted above is the State of Indiana. The Supreme Court of that state now recognizes a law degree earned from a law school which is approved by the state in which the school is located, whether or not the school was ABA approved. With all respect to the action of our sister state, this seems to us to be carrying the concept of full faith and credit to an unjustified extreme, for the net effect is to permit a jurisdiction having the lowest educational criteria determine who may sit for the bar examination in Indiana. We are unable to perceive how this policy serves the public interest.

If we were to consider expanding the privilege of taking the bar examination (or being admitted on motion as an attorney from another state), and were to do so on a more informed approach than that employed in Indiana, the question immediately arises as to what criteria and procedures we should employ in making such a determination. Without written criteria to be met by the schools involved and without an established system of inspection and evaluation, plus periodic reevaluation, the approval would be on an *ad hoc* basis, without any of the standards which all agree are essential. With such an established system for Pennsylvania, it would seem that we would merely be duplicating the

19. Certain law schools in Alabama, Georgia, Mississippi and Tennessee do not have ABA approval but their graduates are permitted to take the bar examination in the respective states.

20. Dickinson School of Law, Temple University School of Law, University of Pennsylvania Law School, Duquesne University School of Law, University of Pittsburgh School of Law, and Villanova University School of Law. A seventh school, Delaware Law School, is now also considered a Pennsylvania law school. Although physically located in Wilmington, Delaware, the school is now an integral part of Widener College, situated in Chester, Delaware County, Pennsylvania. The Delaware Law School has been ABA accredited since 1975.

ABA program, unless, of course, we wished to make the standards either more stringent or less stringent than the ABA standards.[21] No one has advanced to us any argument that either variant is presently necessary or desirable. At this time, therefore, we see no virtue either in allowing a school unapproved by the ABA to seek independent recognition from Pennsylvania, or in permitting a bar examination applicant to attempt to prove to this Court that his unapproved school does in fact measure up to ABA standards.

Our holding today is in accord with longstanding and unanimous authority which has rejected the non-delegation argument here advanced as well as a host of other constitutional attacks on the requirement that an applicant for admission to the bar be a graduate of an ABA-approved law school. See, *e. g., Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036 (D.N.J.1975), *aff'd*, 546 F.2d 418 (3d Cir. 1976); *Rossiter v. Colorado State Board of Law Examiners*, No. C–4767 (D.Colo., filed August 26, 1975) (three-judge court); *Lombardi v. Tauro*, 470 F.2d 798 (1st Cir. 1972) (no unlawful delegation); *Kadans v. Collins*, 441 F.2d 657 (9th Cir. 1971), *appeal dismissed*, 404 U.S. 1007, 92 S.Ct. 672, 30 L.Ed.2d 656 (1972); *Hackin v. Lockwood*, 361 F.2d 499 (9th Cir. 1966), *cert. denied*, 385 U.S. 960, 87 S.Ct. 396, 17 L.Ed.2d 305 (1967); *In re Lorring*, 75 Nev. 330, 340 P.2d 589 (1959); *Rosenthal v. State Bar Examining Committee*, 116 Conn. 409, 165 A. 211 (1933).

21. Because of the number of law schools located in California that state presents a special situation. There are fifty-seven (57) law schools in the state, some fifteen (15) of which have received ABA approval; forty-two (42) have not been so approved. *See* American Bar Association Section of Legal Education and Admissions to the Bar, A Review of Legal Education in the United States—Fall 1977 (1978). California has developed a system for accrediting those schools in the latter group which meet the lesser requirements set by the California Committee of Law Examiners. Graduates of those schools may sit for the bar examination like graduates of the ABA approved schools. We understand that there are presently eight (8) such institutions. As to the remainder, possessing no accreditation status, students must pass a state-administered first year law examination and successfully complete two years of full-time or three years of part-time study in order to be allowed to sit for the California bar examination.

The orders of the Pennsylvania Board of Law Examiners are affirmed.

MANDERINO, J., filed a dissenting opinion in which LARSEN, J., joins.

NIX, J., did not participate in the decision of the appeal at No. 44, Application of Thomas Sylvester Acker.

MANDERINO, Justice, dissenting.

I dissent because once again this Court unconstitutionally denies a citizen the right to sit for the Pennsylvania Bar Examination. It does so for only one reason, because the American Bar Association—a private organization which can not be properly delegated any governmental authority—is blindly followed by this Court. The decision violates both the Pennsylvania and the Federal constitutions. The petitioners should not be required to seek relief in the federal courts—we should grant the relief requested.

In my dissenting opinion to this Court's recent adoption of new Bar Admission Rules, I pointed out the unconstitutionality of defining "accredited law school" as "[a] law school accredited by the American Bar Association." *In Re: Pennsylvania Bar Admission Rules,* —— Pa. ——, (No. ——, Sup. Ct.Rules Docket No. ___ (filed _____) (dissenting opinion of Manderino, J.) (slip opinion at pg. 1)). The Court today applies this unconstitutional rule to prevent Edward M. Murphy, II, and Thomas Sylvester Acker from taking the Pennsylvania Bar Examination. I dissent.

To demonstrate the inequity of the Court's blind adherence to its rule delegating its accrediting authority to the American Bar Association, I will briefly outline the qualifications and experience of one of the petitioners here, Edward M. Murphy, II, who on September 10, 1977, applied to the State Board of Law Examiners (Board) for permission to take the February, 1978, Pennsylvania Bar Examination.

Appellant Murphy studied law at Armstrong College of Law, Berkeley, California from September 1972, until June 1974, at which time he transferred to Western State Univer-

sity College of Law of Orange County, Fullerton, California, from which he graduated. Neither school is "accredited" by the American Bar Association.

Appellant Murphy successfully completed his law school curriculum and took and passed the California Bar Examination in July of 1976. Additionally, appellant has been admitted to the practice of law in the Supreme Court of the State of California, the United States District Court of Appeals for the Third Circuit, the United States District Court for the Middle District of Pennsylvania, and the United States District Court for the Northern District of California. Despite these obvious qualifications, appellant Murphy is not even allowed to take the Pennsylvania Bar examination because he graduated from a law school not "accredited" by the American Bar Association.

At the time of Murphy's graduation from Western State University, it was fully accredited and approved by the Committee of Bar Examiners of the State of California (the accrediting agency for the State of California); by the Western Association of Schools and Colleges (the national and regional accrediting agency for that area); by the California State Department of Education; by the California Superintendent of Public Instruction; by the Association of Private Law Schools; by the American Association of Law Libraries; by the Southern California Association of Law Libraries; by the United States Veterans Administration; by the California Department of Veterans Affairs; by the Department of Health, Education and Welfare; by the California State Competitive Graduate Fellowship Grants; by the United States Department of Justice; by the United States Army and United States Marine Corps (for both in-service and off duty educational benefits).

As I stated in my dissenting opinion to the adoption of this Rule,

"Article 5, Section 1 of the Pennsylvania Constitution vests the power of the Commonwealth in a unified court system, while Section 2 of that Article declares that 'the Supreme Court shall be the highest court of the Common-

wealth and in this court shall be reposed the supreme judicial power of the Commonwealth.' Article 5, Section 10(c) states that,

> '[T]he Supreme Court shall have the power to prescribe general rules . . . for admission to the bar and to practice law . . . if such rules are consistent with this Constitution . . ..'

"In *Chartiers Valley Jt. Schs. v. Allegheny Co. Bd.*, 418 Pa. 520, 211 A.2d 487 (1965), this court was called upon to assess the constitutionality of the School Reorganization Act of 1963, Act of August 8, 1963, P.L. 564, § 1 et seq. (24 P.S. § 2–202 et seq.), as against a challenge that it violated the constitutional rule against delegation of the legislative power. As stated in *Chartiers Valley*,

> '[t]he rule against [sic] nondelegation of legislative power is premised in this case on Article II, § 1 of the Constitution of Pennsylvania which vests the legislative power of the Commonwealth in the General Assembly. *While not specifically set forth in the Constitution, the nondelegation rule is a natural corollary to Article II, § 1 since it requires that the basic policy choices involved in "legislative power" actually be made by the Legislature* as constitutionally mandated.' (Emphasis in original.)

*Id.*, 418 Pa. 529, 211 A.2d at 492.

"Article 5 confers the supreme judicial power of the Commonwealth upon this court. Like the prohibition against delegation of legislative authority that flows from the grant of legislative power contained in Article 2, Section 1, it follows as a corollary to Article 5 that the basic policy choices involved in the exercise of the judicial authority of the Commonwealth must actually be made by the Supreme Court.

"As we recognized in *Chartiers Valley, supra*, '. . . the nondelegation principle does not require that all details of administration need be precisely or separately enumerated in the statute.' *Id.*, 418 Pa. at 529, 211 A.2d at 492. The Legislature, however, must prescribe general rules and reasonably definite standards.

'While the legislature cannot delegate the power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provision of the Act.' *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 342, 54 A.2d 277, 284 (1947); (quoted in *Chartiers Valley, supra*, 418 Pa. at 529, 211 A.2d at 492.).

"In *State Board of Chiropractic Examiners v. Life Fellowship of Pa.*, 441 Pa. 293, 272 A.2d 478 (1971), (Opinion of Roberts, J., joined by O'Brien, J., with two Justices concurring in the result), Section 15 of the Chiropractic Registration Act (requiring that to be eligible for renewal of their annual registration and license, chiropractors had to demonstrate that they had attended a two-day educational conference held by the Pennsylvania Chiropractic Society, or an equivalent education conference) was declared to be an unlawful delegation of legislative authority in violation of Article 2, Section 1. Relying on *Chartiers Valley, supra*, the opinion concluded that:

'. . . a statute stating attendance at a conference of a particular chiropractic society will satisfy license and registration standards, without providing any guide or criterion, is an unlawful delegation to that society of the power to determine the requirements, quality and nature of chiropractic continuing education, and is an abrogation by the General Assembly of its constitutional legislative duties.' *Id.*, 441 Pa. at 298, 272 A.2d at 481.

"As in the legislative delegation of authority condemned in *State Board of Chiropractic Examiners, supra*, the delegation to the ABA of the authority to determine the 'requirement, quality, and nature' of the legal education required of attorneys of this Commonwealth contains no guides or criteria within which the ABA must act when carrying out this judicial function.

"As in the attempted delegations of legislative authority discussed in *State Board of Chiropractic Examiners, supra, Chartiers Valley, supra,* and *Belovsky, supra,* any attempt to confer the judicial power upon a body other than those courts granted such authority by Article 5 of the Constitution must be accompanied with '. . . adequate standards which will guide and restrain the exercise of the delegated administrative functions.' *Chartiers Valley, supra,* 418 Pa. at 529, 211 A.2d at 493. But where are the standards which will guide the American Bar Association in the exercise of its delegated function of accrediting law schools? The answer is simple, and obvious: there are none. The ABA is given unlimited discretion to devise standards of accreditation as it alone sees fit. The interests of the ABA may or may not be the proper interests of a governmental body.

"In the past, Pennsylvania has permitted graduates of law schools other than those approved by the ABA, to take the bar examination and be admitted to the bar. This was done because the rules permitted a school to seek the approval of the Supreme Court even if it were not approved by the ABA. This alternate approval method was at some time in the past deleted from the rules. I realize that it would be very impractical for Pennsylvania to set up its own independent accrediting agency. This is no reason, however, to unconstitutionally delegate to a private organization our responsibilities. I see no problem with allowing graduates of an accredited ABA school to take the bar examination *if* the door is also open for graduates of other schools to seek approval from the Supreme Court either individually or by their schools. This was permitted in the past, and should be permitted now. The unrestrained grant of the judicial authority to the ABA violates the Pennsylvania Constitution and I, therefore, dissent."

The inequity of the Rule is made glaringly apparent in this case, and I refuse to join in its application. The Rule's inequity is equally apparent in the case of appellant Thomas

Sylvester Acker; however, it would serve no useful purpose for me to now examine in detail the nature of his qualifications.

Additionally, there is no distinction between appellants in this case and Thomas M. Sulk, whose appeal from the Board's denial of permission to take the Pennsylvania Bar Examination (for the reason that he graduated from a non-ABA accredited Law School) we granted on June 6, 1977. (See 376 Misc. Docket No. 21.) To deny a law school graduate's request to sit for the Pennsylvania Bar Examination, solely on the basis that the American Bar Association has not seen fit to accredit the school, violates both the Pennsylvania and Federal Constitutions. I therefore dissent.

LARSEN, J., joins in this dissenting opinion.