**Amrit LAL**

v.

**Honorable Robert N.C. NIX Jr., et al.**

**Civil Action No. 94–7773.**

United States District Court,
E.D. Pennsylvania.

*July 25, 1996.*

---

Michael B. Yulsman, Abington, PA, for Plaintiff.

Mark L. Tunnell, John L. Hall, West Chester, PA, Sean Roberts, Philadelphia, PA, for Borough of Kennett Square, Kenneth Roberts as President of the Borough Council, J. McCarthy, C. Merrick, M. Piergalline, J. Scalise, T. Zunino, C.S. Cramer, Mayor, Doughlas, Margueriet, Borough Manager, Charles Warner, Code Enforcement Official, Albert McCarthy, Chief of Police, John L. Hall, Associate Solicitor, Mark Tunnell, Assistant Solicitor and John Halstead, Solicitor.

C. Robert Elicker, Jr., West Chester, PA, for Government of Chester County, Joe Kenna, A. Dinniman, and K. Martynick, Commissioners.

Howard M. Holmes, Philadelphia, PA, for Marita Hutchinson, Property Manager and The Honorable Thomas Gavin.

Patricia M. Hamill, Philadelphia, PA, for Joseph R. Pitts, Legislative Representative from Kennett Square.

## MEMORANDUM

DITTER, District Judge.

This case arises out of the defendants' refusal to admit the plaintiff, Amrit Lal, to the Pennsylvania bar. Lal, who is a naturalized United States citizen born in India, alleges in his *pro se* amended complaint that the defendants, the justices of the Pennsylvania Supreme Court and the Pennsylvania Board of Law Examiners and its members, executive director, and counsel, denied him admission to the Pennsylvania bar because of his race, national origin, ethnicity, and age. Lal was 60 years old when he applied for admission to the bar.

Before me is the defendants' motion to dismiss or for summary judgment. I conclude that I do not have subject matter jurisdiction over Lal's claims, and must dismiss the amended complaint with prejudice. I dismiss with prejudice because amending the complaint would be futile.

## I. FACTS

Because I dismiss for lack of subject matter jurisdiction, I have taken as true all of the allegations in Lal's complaint and drawn all reasonable inferences in his favor. I have also considered the transcript of Lal's hearing before the board and the state supreme court docket sheet showing the court's order denying his admission. *Cf. Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 5 (3d Cir.1994) (court may consider public records when deciding motion to dismiss under Fed.R.Civ.P. 12(b)(6)). The parties extensively refer to each document in papers filed in this matter and do not dispute their accuracy or authenticity.

Lal applied for and took the July, 1992, Pennsylvania bar examination. Following his completion of the examination, the board learned that he had been convicted, fined, and jailed for several housing code violations relating to his ownership of an apartment complex in Chester County, Pennsylvania, and that he had failed to pay many of those fines. Based on that information, the board notified Lal that he did not appear to meet the Pennsylvania Bar Admission Rules' requirement that an applicant demonstrate an absence of prior conduct inconsistent with that expected of members of the bar. *See* Pa.B.A.R. 203(a)(3). Lal requested a hearing, which the board held in January, 1993. At the hearing, Lal did not deny that he had been convicted, fined, and jailed, and that many of the fines were outstanding, but in-

stead testified that those prosecutions were instituted by racist municipal officials.

Following the hearing, the board refused Lal's application. Pursuant to Pennsylvania Bar Admission Rule 222, Lal sought review of this refusal in the Pennsylvania Supreme Court and in July, 1993, filed a brief arguing his position. In a *per curiam* order dated October 28, 1993, the supreme court affirmed the board's decision. Lal did not seek review of the state court's decision in the United States Supreme Court.

In a previous opinion and order dated November 13, 1995, I dismissed the bulk of Lal's original complaint on *Rooker–Feldman* grounds, because it requested that I review the Pennsylvania Supreme Court's and board's decisions refusing his admission to the bar. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).[1] In addition to Lal's request for review of the state supreme court's and board's decisions, the original complaint contained two references to "disparate treatment and racial discrimination." I granted Lal leave to amend his complaint so as to state more fully his apparent claim of "disparate treatment and racial discrimination."

On June 10, 1996, I ordered Lal to respond to the defendants' motions by June 20, 1996. The defendants had filed their motion in December, 1995, giving Lal almost six months to respond. Lal filed a response on June 20, 1996. Despite having more than sufficient time to respond, on June 28, 1996—eight days after the deadline set in my order—Lal filed a supplemental memorandum in response to the defendants' motions. For completeness' sake, I have not dismissed the memorandum as untimely and will consider the arguments raised in it.

## II. *THE AMENDED COMPLAINT*

Lal filed an amended complaint which contained two counts. The first, numbered "count 20," was filed pursuant to 42 U.S.C. § 1983 and alleged that the defendants refused his admission to the bar because of his race, national origin, or ethnicity in violation of his federal constitutional rights to due process and equal protection. (*See* Amend. Comp. ¶ 20). The other, numbered "count 21," alleged that Lal was denied admission based on his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.*, ("ADEA"), and the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951, *et seq.* ("PHRA") (Amend.Comp. ¶ 28).

Lal bases his race, national origin, and ethnicity claim on the following averments. In July, 1992, according to Lal, Defendants Patrick Tassos, the board's executive director, and Rebecca Sturchio, Esquire, the board's counsel, asked him "to go back to India" if he wished to practice law and attempted to discourage him from becoming a member of the Pennsylvania bar. (Amend. Comp. ¶ 5). Shortly thereafter, Lal alleges Sturchio required him to submit a certified copy of his Indian law degree, proof of his United States citizenship, and a copy of an Indian statute prohibiting American citizens from practicing law there. (Amend.Comp. ¶¶ 4, 7). When Lal complied with all of these requirements, he claims the defendants then subjected him to "secret," "unwritten," "vague," and "unconstitutional" good character standards. In applying those standards, he contends the board relied on "hearsay" allegations of his arrests, fines, and convictions, failed to provide him written notice of the board's good character requirements at his January, 1993, administrative hearing, and generally conducted that hearing unfairly. (Amend.Comp. ¶¶ 12–13). Apparently, the sole allegedly discriminatory action taken by the supreme court justices was issuing their order affirming the board's decision.

---

1. In his response to the defendants' motion to dismiss, Lal argues that the state supreme court's decision not to admit him to the bar was "administrative" and not a "judicial decision" within the meaning of the *Rooker–Feldman* doctrine. I definitively and explicitly rejected that argument in my November 13, 1995, opinion and again in my May 9, 1996, order reconsidering that opinion. Because I have previously rejected Lal's argument twice before, the issue is not now before me.

As relief, Lal seeks lost earnings and punitive and compensatory damages, attorneys' fees and costs, and

> permanent and prospective injunctive relief against all the individual defendants named in the original complaint, enjoining them forever [sic] denying petitioner's permission to sit for the Pa. Bar Exam without due process and equal protection of the law as guaranteed by the 14th Amendment to the U.S. Constitution and from violating plaintiff's civil and constitutional rights in denying certification and admission to the Bar of Pennsylvania on account of his race, national origin and age.

(Amend.Comp. at 5–6).

In count 21, Lal contends that the defendants knew that he was 60 years old when they denied his application and that the denial was because of his age. He requests damages comprising "lost time and earnings" in the amount of $225,000.[2]

## III. *DISCUSSION*

■ In their present motion, the defendants argue that I must dismiss the amended complaint as violative of the *Rooker–Feldman* doctrine because in it Lal seeks a prohibited federal district court review of the state supreme court's and board's decisions denying him admission to the bar. The crux of the defendants' argument is that granting Lal the relief he seeks would require me to conclude that the real reason the state supreme court and board refused him admission to the bar was not his unfit character, but his race, ethnicity, national origin, or age.

Lal argues that in my November 13, 1995, opinion I ruled that the *Rooker–Feldman* doctrine is not a bar to the claims in the amended complaint. Lal misreads my opinion. The averments in Lal's original complaint relating to "disparate treatment and racial discrimination" were so vague, skeletal, and patently insufficient, that anyone reading

the complaint would have no idea what he was alleging. I could not possibly have ruled the *Rooker–Feldman* doctrine inapplicable given such incomprehensible allegations. Indeed, one of the reasons I permitted him to amend the complaint was to state those allegations in more detail so that I *could* determine whether the *Rooker–Feldman* doctrine barred his claims. (*See* November 13, 1995, op. at 2).

■ In *Feldman,* the United States Supreme Court held that a federal district court does not have subject matter jurisdiction to review a judicial decision of a state's highest court. *See also Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970) ("lower federal courts possess no power whatever to sit in direct review of state court decisions"). The Court also held that federal district courts do not have subject matter jurisdiction to hear constitutional claims not raised in the state court proceedings but which are "inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar." A review of those unraised and unlitigated constitutional claims is prohibited because it would require the federal district court to "in essence" review the state court's judicial decision. *Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. at 1314–15 n. 16. Only the United States Supreme Court has subject matter jurisdiction to hear an appeal of a state court's judicial decision or constitutional claims "inextricably intertwined" with the state court judgment. *See* 28 U.S.C. § 1257(a); *see also Rooker,* 263 U.S. at 416, 44 S.Ct. at 150. The United States Court of Appeals for the Third Circuit has construed the *Rooker–Feldman* doctrine to preclude federal district court review of the lower state courts as well. *See Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York and New Jersey Police*

---

**2.** Even if I did not dismiss Lal's federal age discrimination claim for lack of subject matter jurisdiction, I would dismiss it as time barred because he did not file suit within 300 days of the defendants' alleged discriminatory conduct. *See* 29 U.S.C. § 626(d)(2). Additionally, Lal's claim

is flawed because he does not allege that he ever filed a grievance with the Equal Employment Opportunity Commission, which is a prerequisite to bringing a federal civil action under the ADEA. *See* 29 U.S.C. § 626(d); *Bihler v. Singer Co.,* 710 F.2d 96, 97 (3d Cir.1983).

*Dep't,* 973 F.2d 169, 178 (3d Cir.1992).[3]

Lal argues that dismissal of his claims will leave him unable to litigate them in federal court. The *Feldman* Court recognized that plaintiffs who did not raise their federal constitutional causes of action in state court, and thus did not preserve them for United States Supreme Court review, would be without a forum to litigate them. That result is appropriate, the Court concluded, because state courts are competent to properly decide federal constitutional claims. The Court further reasoned that precluding lower federal court review of state court judgments also advances the "desirable" policy of having a state court be the first to construe the state statute or rule in light of federal constitutional arguments, allowing it to give the rule a saving construction in light of those arguments. In so holding, the Court specifically rejected the Fifth Circuit's holding in *Dasher v. Supreme Court of Texas,* 658 F.2d 1045 (5th Cir.1981), that a federal district court has subject matter jurisdiction to review constitutional claims that a litigant fails to raise in the state court proceeding.

■ In a related argument included in his supplemental memorandum, Lal claims that with a post-*Feldman* amendment to 28 U.S.C. § 1257, Congress invalidated or limited the application of the *Rooker–Feldman* doctrine. In 1988, Congress amended section 1257 to eliminate the *right* to appeal to the United States Supreme Court from a state court judgment calling into question federal law. Thereafter, parties to such cases could only request *discretionary* review by writ of certiorari. Lal argues the Court's acceptance of so few cases on discretionary review effectively eliminates his only avenue into federal court. He contends that Congress could not have intended this result. Thus, the argument goes, Congress meant to eliminate the *Rooker–Feldman* doctrine and grant federal district courts jurisdiction to review state court judgments. Lal's argument is unique, but not persuasive. There is no indication in the language of the amendment or in its legislative history that Congress intended to repeal or limit the applica-

tion of the *Rooker–Feldman* doctrine. Moreover, Lal's argument ignores the policy justifications for the doctrine discussed in *Feldman,* which are still furthered by the amended section 1257. Indeed, the legislative history cites the state courts' competence to decide federal constitutional claims as a basis for passing the amendment. *See* H.R.Rep. No. 100–660, 100th Cong. at 7, 1988 U.S.C.C.A.N. 776, 772 (1988).

■ There is no indication that Lal raised his race, ethnicity, national origin, or age discrimination claims either before the board or the state court. Accordingly, resolution of this case turns on whether Lal's claims are "inextricably intertwined" with the state supreme court's decision denying his admission to the bar. If they are, I do not have subject matter jurisdiction and must dismiss the amended complaint. "A federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir.1989) (*quoting Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring)); *see also FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996) (*Rooker–Feldman* doctrine prohibits federal action if relief requested would render state court judgment ineffectual).

I do not have subject matter jurisdiction over the claims in Lal's amended complaint because they are "inextricably intertwined" with the state supreme court's judgment and board's decision in his bar admission proceeding. As *Feldman* makes clear, Lal is not permitted to make a particularized challenge in federal court to an adjudication against him in state court. In the state proceedings, the board found Lal not fit for admission to the Pennsylvania bar because he engaged in conduct which showed his character was incompatible with the standard expected to be observed by members of the bar. *See* Pa.B.A.R. 203(a)(3). The state supreme court affirmed that decision. In order to grant the relief requested in the amended

---

**3.** Lower federal courts may review state court judgments only in limited circumstances which

do not exist here, such as on an application for a writ of habeas corpus. *See* 28 U.S.C. § 2254.

complaint, I would have to conclude that Lal's bad character was not the real reason for the denial of his application for admission to the bar but that the real reason was his race, ethnicity, national origin, or age. Such a finding would clearly void the judgment of the state court and violate the *Rooker–Feldman* doctrine.[4]

The conclusion that my decision on the merits of Lal's claims would require me to make a prohibited review of the state court judgment is consistent with both *Marks v. Stinson,* 19 F.3d 873 (3d Cir.1994), and *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834 (3d Cir.1996). In both of those case, the Third Circuit allowed federal court actions to proceed despite orders in proceedings in state court relating to the same claims.

In *Marks,* following a state court's ruling that it lacked jurisdiction under state law to hear the plaintiffs' claims, the plaintiffs filed suit in federal court. The Third Circuit held that the *Rooker–Feldman* doctrine would not bar the *Marks'* plaintiffs' federal lawsuit because the only issue decided by the state court related to state law jurisdiction. Thus, the federal court could still find that the plaintiffs' federal claims had merit without disturbing the state court ruling that it had no jurisdiction under state law to hear plaintiff's claims.

Similarly, in *FOCUS,* the Third Circuit allowed a federal lawsuit to proceed despite a state supreme court order refusing to exercise discretionary authority to hear the plaintiffs' appeal. Following a state trial court's refusal to accept the plaintiffs' motion to intervene in a civil action, the plaintiffs petitioned the state supreme court for exercise of its extraordinary and discretionary "King's Bench" jurisdiction. When the state supreme court refused, the plaintiffs filed suit

in federal district court. On appeal, the Third Circuit held that the state court's refusal to exercise discretionary jurisdiction did not preclude the federal lawsuit because by specifically refusing to even review the case, the state court did not adjudicate the merits of the claims before it. A federal district court, therefore, could decide the plaintiffs' claims without voiding or otherwise disturbing the state courts' orders.

The instant case is distinguishable for one simple but critical reason: in order to grant the relief Lal seeks, I would have to vacate or reverse the Pennsylvania Supreme Court's order. This is quite different than the situations in *Marks* and *FOCUS.* In those cases, given the nature and bases of the state court orders, one holding that the court had no jurisdiction to hear a lawsuit, the other refusing to even review the case, the federal courts could decide the merits of the plaintiffs' claims without affecting the state court orders.

If I allowed Lal to raise his claims now, after his unsuccessful attempt to complete the state bar admission process, I would be ignoring the *Rooker–Feldman* doctrine. There is no question that the Pennsylvania Supreme Court was competent to review Lal's claim that the board and its procedures were discriminatory. *See Feldman* 460 U.S. at 482 n. 16, 103 S.Ct. at 1314–15 n. 16; *Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993). Further, a decision by me on the merits of Lal's claims would encourage other litigants to challenge state court decisions in federal court improperly, depriving state courts of the opportunity to give saving constructions to state rules and statutes in light of federal constitutional arguments.[5]

Moreover, the history of Lal's bar admission proceeding establishes that he had ample opportunity to raise his discrimination

---

4. Strictly speaking, *Feldman* only prohibits bringing "inextricably intertwined" *constitutional* claims in a federal lawsuit. However, my ruling on the merits of Lal's statutory claims under the ADEA and PHRA would violate the *Rooker–Feldman* doctrine for the same reasons as would a ruling on the merits of the constitutional claims would: in order to grant him the relief he seeks, I would have to find that the real reason for the denial of his application was his age and not his unfit character. Such a ruling would void the state court judgment.

5. Such a ruling by me would be especially unwise given the strong state interest in regulating and licensing lawyers and would needlessly entangle the federal courts in issues more aptly and efficiently handled by the states. *See Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16 ("[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts' ") (quoting *Goldfarb v. Virginia*

**584**

claims before the state supreme court. He was aware of virtually all of the state officials' allegedly discriminatory conduct even before his January, 1993, board hearing, let alone before he submitted his brief to the state supreme court in July, 1993.

Lal argues that I should permit his claims to proceed because he could not have raised them before the board and supreme court. However, he points to no obstacle to his raising the claims in the state supreme court. Indeed, the Pennsylvania Supreme Court has previously considered the constitutionality of the board's actions and bar admission rules in several appeals by unsuccessful bar applicants. *In the Matter of Ferriman,* 487 Pa. 45, 408 A.2d 844 (1979) (constitutionality of rule requiring graduation from accredited law school); *Appeal of Kartorie,* 486 Pa. 500, 406 A.2d 746, 747 (1979) (same); *Appeal of Murphy,* 482 Pa. 43, 393 A.2d 369 (1978) (same), *cert. denied,* 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979); *Appeal of Icardi,* 436 Pa. 364, 260 A.2d 782, 784 (1970) (procedural due process claim); *Appeal of Christy,* 362 Pa. 347, 67 A.2d 85, 87 (1949) (due process and equal protection claims), *cert. denied,* 338 U.S. 869, 70 S.Ct. 145, 94 L.Ed. 533 (1949).

## IV. *CONCLUSION*

In sum, because I do not have subject matter jurisdiction over the amended complaint, I must dismiss it with prejudice.[6]

---

*State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)).

**6.** Parts of Lal's amended complaint are plainly defective for other reasons. First, his claim for money damages against the state supreme court justices is barred by judicial immunity which protects the justices from suits for damages for actions taken pursuant to their judicial power. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 287–88, 116 L.Ed.2d 9 (1991). Accordingly, because the justices have jurisdiction to regulate admission to the state bar, *see* Pa. Const., Art. 5, § 10(c); 42 Pa.C.S. § 1722(a)(1); Pa.B.A.R. 103, and because their actions were judicial, Lal cannot sue them for money damages. Second, Lal's section 1983 claim for damages against the individual defendants in their "official capacities"

and the board must be dismissed because a state official acting in his or her official capacity and a state agency are not "persons" within the meaning of § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Finally, the individual defendants acting in their official capacities and the board have Eleventh Amendment immunity from suits for money damages in federal court. Lal claims that the defendants waived these defenses or that in my November 13, 1995, opinion I implicitly ruled the defenses were without merit. The defendants did not waive the defenses because they asserted them at every turn. Further, it is clear from my November 13, 1995, opinion that I never ruled on these defenses, either explicitly or implicitly.