Mark C. WHYMEYER, Petitioner

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE REGISTRATION BOARD FOR PROFESSIONAL ENGINEERS, LAND SURVEYORS AND GEOLOGISTS, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 31, 2009.

Decided June 22, 2010.

Robert D. Mariani, Scranton, for petitioner.

Thomas A. Blackburn, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Mark C. Whymeyer (Whymeyer) petitions for review of the July 23, 2008 order of the State Registration Board for Professional Engineers, Land Surveyors and Geologists (Board) denying his appeal from a provisional denial of his application to sit for the fundamentals of engineering examination pursuant to Section 4.2(b)(1)(i) of the Engineer, Land, Surveyor and Geologist Registration Law (the Law).[1] As described by the Board:

> An applicant for licensure as a professional engineer must satisfactorily complete the fundamentals of engineering examination and become certified as an engineer-in-training and subsequently show evidence of experience satisfactory to the Board to prepare him for the principles and practice of engineering examination. Section 4.2(a) of the [Law], 63 P.S. § 151.2(a). An applicant for the engineer-in-training certificate must show satisfactory evidence of graduation from an approved engineering curriculum of four or more years. Section 4.2(b)(1)(i) of the [Law], 63 P.S. § 151.2(b)(1)(i); 49 Pa.Code § 37.31(1)(i).

Final Adjudication and Order at p. 6. In other words, to become licensed as a professional engineer in Pennsylvania, one must graduate from a Board-approved four-year engineering curriculum, then pass the fundamentals of engineering exam, thereafter obtain sufficient practice experience satisfactory to the Board to be allowed to take the principles and practice examination, and then pass that exam. The dispute here centers on whether Whymeyer's electrical engineering degree from the University of Scranton (University)

---

1. Act of May 23, 1945, P.L. 913, *as amended,* added by Section 7 of the Act of December 19, 1990, 63 P.S. § 151.2(b)(1)(i).

qualifies him to sit for that first examination. The Board defines "engineering curriculum" as "[a] curriculum of 4 or more years approved by a National accrediting association recognized by the Board which leads to a baccalaureate degree." 49 Pa. Code § 37.1. For the reasons that follow, we reverse and remand this matter to the Board with directions to permit Whymeyer, upon application, to sit for the fundamentals of engineering examination.

The background of this case is as follows. In May 2006, the University awarded Whymeyer a Bachelor of Science degree in electrical engineering, *magna cum laude*. In September 2006, Whymeyer submitted an application to the Board to sit for the engineering examination. In May 2007, the Board reviewed Whymeyer's application and voted provisionally to deny it because the Accreditation Board in Engineering and Technology (ABET) had not accredited the University's electrical engineering program. The Board uses ABET accreditation to determine whether an applicant has graduated from an approved engineering curriculum. In June 2007, Whymeyer appealed the provisional denial and requested a hearing.

At the November 2007 hearing, Whymeyer testified on his own behalf and also presented the testimony of two witnesses from the University: Dr. Paul F. Fahey, a professor in the Department of Physics/Electrical Engineering and Chair of that Department and Dr. Joseph H. Dreisbach, Dean of the College of Arts and Sciences. Dr. Fahey presented documents detailing the University's curriculum and program of study for electrical engineering as well as, *inter alia*, prizes won by University students in interscholastic competitions in engineering from 1998 through 2007. He testified that the schools against which they competed "could range from very large programs like Ohio State and Penn State to smaller programs like Lafayette and Bucknell." November 21, 2007

Hearing, N.T. at 21; R.R. at 47a. He stated that, "Our program is fairly small and circumscribed but what we do, we do very well." N.T. at 22; R.R. at 47a. He opined that the proof of the quality of their program is that the graduates were in demand for good jobs.

The University itself is accredited by the Middle States Commission on Higher Education, which is responsible for accrediting four-year colleges and universities in this region of the country, but the electrical engineering program has not been separately accredited by the ABET. Dr. Fahey testified that the University had twice in the 1980's sought ABET accreditation for the engineering program but was unsuccessful, in his view, because of the small size of the program, particularly with respect to the number of full-time faculty devoted to the program. He stated that "ABET really had no problems at all with the facility and with the labs and had no problems at all with the expertise of the faculty." N.T. at 35–36; R.R. at 50a. Moreover, he opined that currently the electrical engineering program would satisfy the ABET criteria, both because the focus of ABET had moved away from "bean counting" and because of the increase in the number of full-time faculty members devoted to the University's program. It has not re-applied for ABET accreditation because of the cost of doing so. In that regard, he indicated as follows:

It would be a considerable expense to get ready for accreditation and to do the accreditation report that must be done. With the past as a predictor of the present, it would require us to spare one person full-time for a year. . . . And in a department of eight, we just can't spare it. . . . If you have to set aside—do the equivalent of setting aside one faculty for a year, that's a—you know. I'd say it's $100,000 or so between salary, and

benefits, and so on. And we just don't have that to spare right now.

N.T. at 28–29; R.R. at 48a–49a.

This testimony was echoed by Dr. Dreisbach, who noted that:

Well, the nature of the curriculum, I think, is incredibly strong based on the quality of the graduates that we send out. Their employment record is excellent. Mark is a good example. The—a few years ago, ABET moved from its more of an input type of accreditation format to an outcome based accreditation format where ABET now is a bit more interested in seeing what happens in terms of the teaching/learning process. And again, all of our evidence that we have in the department with regard to the quality of courses, the quality of students that we're graduating indicate that the program is very strong curricularwise and academically.

N.T. at 60–61; R.R. at 56a–57a. Both professors unequivocally endorsed Whymeyer's qualifications to sit for the exam. There were no witnesses for the Commonwealth.

The Board issued a decision in July 2008. With regard to the University's undergraduate program in electrical engineering, it found that the program had eight faculty members, awarded an average of six bachelor degrees each year and was not ABET-accredited. Although the University had sought ABET accreditation for its engineering program in 1986, it now believed that the cost and effort to achieve and to maintain the accreditation was not justified given the small size of the pro-

gram.[2] In addition, although University representatives would answer truthfully when asked, they did not affirmatively advise either potential or current students that the program was not ABET-accredited.

As for Whymeyer, the Board found that, it was only when he was seeking employment after graduation that he learned from an interviewer about the process of professional licensure and the examination requirement. In addition, he did not discover the fact that the program was not ABET-accredited until the Board provisionally denied him permission to sit for the examination.

Based on the evidence adduced at the hearing, the Board concluded that Whymeyer did not meet the educational requirements to sit for the examination and denied his appeal without prejudice to his applying again upon meeting other work experience based requirements.[3] The Board noted its deferral to ABET to approve engineering curricula through the accreditation process and declined to engage in an independent evaluation of the University's engineering program based on the evidence before it. It stated:

Because the school was able to have other programs accredited by ABET, the Board cannot accept the premise that the only thing standing in the way of accreditation of the electrical engineering program was the cost to go through the accreditation process. Without a basis to believe that the University of Scranton's undergraduate program in electrical engineering would be

**2.** In contrast, the University's larger programs in computer science and computer information systems, respectively, have been ABET-accredited since 1990 and 2005.

**3.** As an alternative to establishing graduation from an approved engineering curriculum of four or more years, an applicant for the engineer-in-training certificate may show satisfac-

tory evidence of "eight or more years of progressive experience in engineering work and knowledge, skill and education approximating that attained through graduation from an approved engineering curriculum." Section 4.2(b)(1)(ii) of the Law, 63 P.S. § 151.2(b)(1)(ii).

accredited by ABET absent the cost to do so, the Board will not engage in an independent evaluation to determine whether that program meets ABET's standards for accreditation.

Because Applicant graduated from a program that was not accredited by ABET, because accreditation by ABET is the standard for approval of an engineering program, and because Applicant has not provided adequate justification for the Board to look beyond ABET accreditation, the Board cannot find that Applicant has graduated from an approved engineering curriculum. Accordingly, the Board cannot approve Applicant to sit for the fundamentals of engineering examination based upon his education.

Final Adjudication and Order at pp. 7–8 (footnote omitted).[4] Whymeyer's timely petition for review to this Court followed.

Whymeyer raises three issues for our review: 1) whether the Board has abdicated its statutory responsibility to approve engineering programs by delegating that authority to ABET; 2) whether the Board erred in refusing to independently evaluate the University's program in his case; and 3) whether the regulation at issue is unconstitutionally vague because it does not provide reasonable notice that ABET accreditation is necessary for an engineering curriculum to be deemed "an approved engineering curriculum" under Section 4.2(b)(1)(i) of the Law.[5]

We will begin with the last issue, because we find it dispositive, although to some extent the second issue is implicated in this analysis. In pertinent part, the regulation at issue provides as follows:

**Eligibility for certification or licensure, or both.**

Before an applicant takes the examination for licensure as a professional engineer, the applicant shall satisfactorily complete the engineering fundamentals examination and become certified as an engineer-in-training. . . .

(1) *Engineer-in-training.* An applicant for certification as an engineer-in-training shall show satisfactory evidence to the Board of having met one of the following education or experience requirements:

(i) *Education. Graduation from an approved engineering curriculum of 4 or more years. . . .*

49 Pa.Code § 37.31(1)(i) (emphasis added). As noted above, an "engineering curriculum" is defined as "[a] curriculum of 4 or more years approved by a *National accrediting association* recognized by the Board which leads to a baccalaureate degree. . . ." 49 Pa.Code § 37.1 (emphasis added).

Regarding the Law and regulations, Whymeyer first argues that the Board erred in denying his application on the basis that the program was not ABET-accredited because there is nothing in Section 4.2(b)(1)(i) of the Law defining what constitutes "an approved engineering curriculum of four or more years" and nothing whatsoever to indicate that such a curriculum must be one which has ABET accreditation. He points out that the Board in its regulations does not define an engineering curriculum as only one which is ABET-accredited. Given that omission, Whymeyer argues that "national accrediting associ-

---

4. The Board did not attempt to reconcile this statement with its contrary finding of fact that cost *was* the reason the University had not sought ABET accreditation for its electrical engineering program since 1986.

5. Because these issues present questions of law, our review is plenary. *Deliman v. Dep't of Transp., Bureau of Driver Licensing,* 718 A.2d 388 (Pa.Cmwlth.1998).

ation" could refer to the Middle States Commission on Higher Education, which has accredited the University. Thus Whymeyer argues that because the Law and regulations do not contain any statement sufficiently specific to apprise an applicant of the need to have graduated from an ABET-accredited electrical engineering curriculum in order to sit for the examination, they are unconstitutionally vague as applied by the Board.

In support of his position, Whymeyer cites *Watkins v. State Board of Dentistry,* 740 A.2d 760 (Pa.Cmwlth.1999), where this Court concluded that the term "appropriate monitoring equipment" as used in a regulation requiring dental offices to have such equipment for the administration of general anesthesia, was unconstitutionally vague in that it was not defined in the regulation and was subject to many different meanings. Whymeyer argues that the terms at issue in the present case, "an approved engineering curriculum" and a "national accrediting association," are similarly vague in that neither term is essentially defined in either the Law or the regulations and people of reasonable intelligence are left to guess at their meaning and differ as to their application.

The Board disputes Whymeyer's constitutional argument, noting that a statute or a regulation is only unconstitutionally vague if it 1) traps the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what it provides so that he may act accordingly; or 2) results in arbitrary or discriminatory enforcement in the absence of explicit guidelines for its application. *Krichmar v. State Bd. of Vehicle Mfrs., Dealers and Sales Persons,* 850 A.2d 861 (Pa.Cmwlth. 2004). The Board points out that, in determining whether a statute or regulation is sufficiently specific, its language may be interpreted in the context of the common knowledge and understanding of members of a particular profession. *Id.* It asserts that ABET is the only national organization known to it to accredit engineering *programs,* unlike the Middle States Commission on Higher Education which accredits *universities.* Finally, the Board reiterates the statements it made in its decision:

> Any person of ordinary intelligence, especially one seeking to enter this profession, would have been able to identify the only recognized national accrediting body if only he had looked. Applicant was not aware of the accreditation requirement because he had not looked, and not because the [Law] or the Board's regulation might be vague.

Board's Decision at 9.

The Board misses the point. The danger of ambiguity in this particular regulation is not to professional engineers (and we doubt that even professional engineers are knowledgeable about accreditation processes, unless they are in academia). It is the prospective student deciding which college or university to attend who could be fatally misled in his choice. While someone with the expertise of the Board might understand the distinction it draws, we do not believe a person of ordinary intelligence should be expected do so. We agree with Whymeyer that such a person, particularly a high school graduate choosing which university to attend, could reasonably believe that a four-year degree from an accredited university satisfied the standard set forth in the regulation.

This does not mean, however, that the regulation at issue is void on its face. As this Court has noted, "Section 151(a) of

the Law grants broad powers to the Board to approve a school if the quality of its curriculum is satisfactory." *Rabino v. State Registration Bd. for Prof'l Eng'rs*, 69 Pa. Cmwlth. 191, 194, 450 A.2d 773, 774 (1982). In that case, the Board denied Rabino a professional engineer license, in part, because the university from which he received his degree had not been approved by the National Council of State Boards of Engineering Examiners (NCEE). At that time, the Board did not have a regulation delegating the function of accrediting engineering programs to NCEE, but had a policy of approving schools based on their rating with NCEE. This Court determined that NCEE approval was not the exclusive method of accrediting a college or university, noting the Board's broad general powers under Section 4(a) of the Law to approve a school if the quality of its curriculum was satisfactory. Based on Rabino's inability to establish the qualifications of Feati University, however, the Court concluded that he failed to meet his burden of proving that Feati was or should have been an approved institution. Clearly, to the extent that the Board does not rely exclusively on ABET accreditation but exercises its independent judgment regarding an engineering program that lacks ABET approval, the regulation at 49 Pa. Code § 37.1 is not void as applied.

Here, however, the Board did not exercise its independent statutory authority to evaluate the University's electrical engineering program, but specifically declined to do so, relying exclusively on the lack of ABET accreditation.[6] Accordingly, we find that the regulation was unconstitutionally applied in this case, and so reverse the order of the Board.[7] In addition, we remand this matter to the Board with directions to permit Whymeyer, upon application, to sit for the fundamentals of engineering examination.

## ORDER

AND NOW, this 22nd day of June, 2010, the order of the State Registration Board for Professional Engineers, Land Surveyors and Geologists in the above-captioned matter is hereby REVERSED and this case is REMANDED to the Board with directions to permit Whymeyer, upon application, to sit for the fundamentals of engineering examination.

Jurisdiction relinquished.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority opinion because the State Registration Board for Professional Engineers, Land Surveyors and Geologists (Board) has the authority to delegate the accreditation function required in Section 4.2(b)(1)(i) of

---

6. We note that while the Board appears to have discredited the testimony of Drs. Fahey and Dreisbach as to the reasons the University had not sought ABET accreditation, it did not find that the electrical engineering program failed to meet ABET standards. Rather, it refused to engage in an evaluation of whether it would meet those standards. Further, it did not discredit their testimony as to the quality of the program or the qualifications of Whymeyer to sit for the examination. It simply refused to look beyond the issue of ABET accreditation.

7. Because of our disposition of these issues, we need not address whether a regulation which clearly specified graduation from a program with ABET accreditation as a mandatory prerequisite to taking the initial exam would amount to an abdication of the Board's statutory responsibilities and an unlawful delegation of the authority vested in it by the General Assembly.

the Engineer, Land, Surveyor and Geologist Registration Law (Law)[1] to the Accreditation Board in Engineering and Technology (ABET), and ABET did not approve Mark C. Whymeyer's (Whymeyer) engineering curriculum.

In *Appeal of Murphy*, 482 Pa. 43, 393 A.2d 369 (1978), our Supreme Court addressed the issue of whether the Board of Law Examiners properly refused admission of one applicant to sit for the bar exam and another applicant admission by comity (recognizing five or more years of practice in a reciprocating sister state and good standing). Both applicants graduated from law schools which were not accredited by the American Bar Association (ABA). The applicants argued that the "selection of the American Bar Association as the accrediting agency ... [was] an unconstitutional delegation of judicial authority to a non-governmental body such as the ABA." *Id.*, 482 Pa. at 47, 393 A.2d at 371.

In determining that the Board properly refused admission due to the lack of accreditation of the law schools, the Court stated that it had not delegated any judicial function to the ABA and "Pennsylvania, like every other state in the union, has chosen to avail itself of the results of the ABA accreditation procedure, and accepts and adopts the ABA listing. The ABA's long-standing concern with the quality of legal education in the United States needs no documentation here." 482 Pa. at 48, 393 A.2d at 372. The Court went on to explain the credentials of the ABA and then stated:

> [W]e see no virtue either in allowing a school unapproved by the ABA to ˑseek

independent recognition from Pennsylvania, or in permitting a bar examination applicant to attempt to prove to this Court that his unapproved school does in fact measure up to ABA standards. Our holding today is in accord with long-standing and unanimous authority which has ˑrejected the non-delegation argument here advanced as well as a host of other constitutional attacks on the requirement that an applicant for admission to the bar be a graduate of an ABA-approved law school. See, E.g., *Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036 (D.N.J.1975), Aff'd 546 F.2d 418 (3d Cir.1976); *Rossiter v. Colorado State Board of Law Examiners*, No. C4767 (D. Colo., filed August 26, 1975) (three-judge Court); *Lombardi v. Tauro*, 470 F.2d 798 (1st Cir.1972) (no unlawful delegation).

482 Pa. at 52, 393 A.2d at 374.

Similarly, in this case, the Board has the authority to delegate the accreditation function to ABET to ensure that future engineers meet all of the necessary requirements before beginning their careers. Here, Whymeyer did not graduate from a curriculum approved by ABET.

For the above reason, I respectfully dissent.

---

**1.** Act of May 23, 1945, P.L. 913, *as amended*, added by Section 7 of the Act of December 19, 1990, 63 P.S. § 151.2(b)(1)(i).