*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-587

PETER MINSHALL, *et al*., PETITIONERS,

FILED 05/17/2018
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

V.

DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, RESPONDENT,

and

SEAN GLASS, TRUSTEE, INTERVENOR.

Petition for Review of a Decision and Order
of the Office of Administrative Hearings
(DCRA-139-14)

(Argued February 28, 2018                    Decided May 17, 2018)

*Stephen H. Marcus*, with whom *Sherry A. Ingram* was on the brief, for petitioners.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time, and *Loren L. AliKhan*, Deputy Solicitor General at the time, filed a statement in lieu of brief for respondent.

*Andrew H. Marks*, with whom *Allison C. Prince* was on the brief, for intervenor.

Before FISHER and THOMPSON, *Associate Judges*, and PRYOR, *Senior Judge*.

FISHER, *Associate Judge*:   This case concerns a disagreement between neighbors over the construction and height of a wall that separates their properties in Georgetown.   Petitioners ask us to reverse the Administrative Law Judge's ("ALJ") Order which held that their challenges to construction of the wall were untimely.   They argue that the time to appeal did not begin until the Department of Consumer and Regulatory Affairs ("DCRA") issued a third building permit in November of 2014.   We affirm the ALJ's decision to dismiss for untimeliness because petitioners should have appealed, at the latest, when a stop work order was lifted in March of 2014.   We also affirm the ALJ's conclusion that issuance of the 2014 building permit did not renew the time for challenging the already-completed construction of the wall.

## I.  Background and Procedural History

Petitioners Peter and Diana Minshall own a home in the Georgetown Historic District next door to property owned by intervenor Sean Glass.   In 2011 intervenor applied for a permit to renovate his home and to build a two-story rear addition with a penthouse and a basement, an in-ground pool, and exterior stone walls.  DCRA approved the application and issued the permit on March 23, 2012.

Intervenor filed a second application that further described his proposed in-ground swimming pool and set out a "pool/fencing site plan." DCRA issued the second permit on May 25, 2012. Despite receiving a notification form from intervenor that indicated he intended to build "a pool [and] fence near [the] property line," petitioners did not challenge the first or second building permit. Intervenor completed construction of the fence/wall in 2013.

Although petitioners communicated with intervenor by email on multiple occasions between 2012 and 2014 concerning the construction and height of the fence/wall, they did not initiate any legal proceedings during 2013. On February 18, 2014, petitioners complained to the Historic Preservation Office of the District of Columbia Office of Planning ("HPO"). HPO sent an investigator to look at the property and on February 20, 2014, he issued a stop work order ("SWO") for alleged violations of the District of Columbia Construction Code. The violations included failing to obtain a "separate rear yard perimeter fence wall permit in a historic district" and building a "concrete/wood fence wall [that] exceeds the 7 ft. residential height limit with no record of an adjoining property owner agreement."

Intervenor appealed the SWO and a hearing was held before DCRA Hearing Officer Ferdinand Gamboa on March 12, 2014. Mr. Gamboa dismissed the SWO

without prejudice and allowed intervenor to resume construction. Although petitioners did not attend the hearing, Mr. Gamboa let them know the outcome in an email sent on March 14, 2014. Petitioners and their attorney also met with Mr. Gamboa about a month after the hearing, but they did not appeal the officer's decision to lift the SWO.

Petitioners continued to discuss intervenor's projects with an HPO representative and on June 12, 2014, HPO solicited the recommendation of the Commission of Fine Arts ("CFA") "regarding the wall and fences as they have been constructed." At the request of CFA, intervenor also submitted a new permit application to DCRA that included detailed site plans, elevations, and drawings of the existing fence/wall. Although CFA recommended lowering the wooden fence and putting stucco on petitioners' side of the concrete wall, it reported on September 18, 2014, that it did not object to the issuance of the permit. DCRA issued the permit on November 26, 2014, describing the work to be performed as lowering the existing wooden fence and adding stucco and stone veneers to the existing concrete wall. Petitioners then appealed to OAH on December 29, 2014,

requesting that OAH revoke the 2014 permit and order intervenor to remove or redesign the concrete wall.[1]

Petitioners' administrative appeal was originally assigned to an ALJ who presided over two days of evidentiary hearings. The case was then reassigned to Judge Paul B. Handy; he issued an Order converting day three of the proceeding into a hearing on intervenor's argument that the appeal was untimely and should be dismissed. Judge Handy ultimately determined that petitioners' claims were untimely because they were filed more than 10 business days after petitioners knew or should have known of the basis for each claim. *See* 12-A DCMR § 112.2.1 (2014). He found that petitioners "knew or should have known of the basis for their claim in 2012" when DCRA issued the first two building permits and "certainly in February and March 2014, when [they] knew about the Stop Work Order proceeding." Nevertheless, petitioners "failed to participate in the scheduled hearing and failed to appeal the order dismissing the Stop Work Order."

---

[1] Petitioners also filed an appeal with the Board of Zoning Adjustment ("BZA") in January 2015, alleging that the 2014 building permit violated the Zoning Regulations. Although the BZA has not yet issued a written decision, the Board orally found that petitioner's claims were untimely and granted intervenor's motion to dismiss.

Although he held that petitioners timely appealed the issuance of the 2014 permit,[2] Judge Handy concluded that it was too late for them to challenge the "overall construction" of the wall. He considered the parties' exhibits and arguments on the motion to dismiss and found that the 2012 permits provided for the construction of the entire fence/wall but that the only two changes authorized by the 2014 permit were the "application of a stucco finish" and the "lowering of the wooden slats." Petitioners did not challenge either of the two changes addressed in the 2014 permit. Judge Handy granted intervenor's motion to dismiss, and this petition for review followed.

## II. Standard of Review

This court will "leave an agency's decision undisturbed if it flows rationally from findings of fact that are supported by substantial evidence in the record." *Zhang v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 834 A.2d 97, 101 (D.C. 2003). "To be sufficient to support a finding, evidence must be more than a mere scintilla and must be such relevant evidence as a reasonable

---

[2] Judge Handy determined there was no reason to doubt the representation made by petitioners' attorney that he first learned of the issuance of the permit when he checked the DCRA database on December 16, 2014. Consequently, Judge Handy held that petitioners' "December 29, 2014, hearing request was timely filed."

mind might accept as adequate to support a conclusion." *Woodley Park Cmty. Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 490 A.2d 628, 640 (D.C. 1985) (internal quotation marks and citation omitted). With respect to the agency's legal conclusions, "we conduct a *de novo* review." *Zhang*, 834 A.2d at 101.

### III. The Timeliness of Petitioners' Appeal

The central question is whether petitioners' challenges to the height and construction of intervenor's concrete wall were timely.

> The owner of a building or other structure or any person adversely affected or aggrieved by a final decision or order of the code official based in whole or in part upon the Construction Codes, may appeal to the Office of Administrative Hearings (OAH). The OAH appeal shall be filed within 10 business days after the date the person appealing the decision of the code official had notice or knowledge of the decision, or should have had notice or knowledge of the decision, whichever is earlier . . . .

12-A DCMR § 112.2.1 (2014). Petitioners argue that their challenges were timely because they appealed within 10 business days from the date DCRA issued the 2014 permit. They assert that the time for appeal did not begin to run in 2012 because intervenor's first two applications (and the related building permits) "were

incomplete and misleading."[3] According to petitioners, the 2014 building permit was the first decision made by a code official that clearly revealed the height and character of the wall.

We disagree and uphold the ALJ's finding that petitioners "knew or should have known" of the basis for their claims well before DCRA issued the 2014 permit. Although petitioners may have had the requisite notice as early as 2012, substantial evidence in the record shows that they clearly knew of the code official's decision to lift the stop work order in March of 2014. Petitioners did not attend the hearing on the stop work order, but DCRA Hearing Officer Ferdinand Gamboa personally let them know the outcome of that proceeding a few days later.

---

[3] Petitioners rely on *Sisson v. District of Columbia Bd. of Zoning Adjustment*, 805 A.2d 964 (D.C. 2002), when arguing that their time to appeal began with the issuance of the 2014 permit. The court in *Sisson* held that because petitioner's project was developed in a "piecemeal manner" and his various permit applications were often incomplete and misleading, "the full extent of [the] construction project could not be discerned as each individual permit was issued and therefore they must be considered as a whole." *Id*. at 969-70, 971. Thus, the aggrieved party "was not chargeable with notice of the entire scope of [the] work performed . . . until all of the permits were issued." *Id*. at 970. We agree with Judge Handy's determination that "the facts in *Sisson* differ significantly from those in this case." Petitioners' complaints focus on the size and location of the wall, matters of which they clearly had notice well before the 2014 permit was issued.

Petitioners and their attorney also met with Mr. Gamboa about a month after the hearing, but they did not appeal his decision to lift the SWO.

If petitioners truly did not learn of the basis for their claims until March of 2014, they might have attempted to justify belated appeals of the 2012 building permits. However, a more logical recourse might have been to appeal the lifting of the stop work order. We now will address (1) petitioners' argument that they did not have the right to appeal that order and (2) their claim that, in any event, the timely appeal of the 2014 building permit allowed them to challenge the height and location of intervenor's wall.

## A. Appealability of the Decision to Lift the Stop Work Order

To our knowledge, neither an administrative agency of the District of Columbia nor this court has addressed whether the lifting of a stop work order is a decision which may be appealed to OAH. Petitioners argue that they could not have appealed the lifting of the stop work order because "nothing in § 114.11 suggests that a neighbor" has this right of appeal. However, 12-A DCMR § 114.11 (2014) is not directly relevant to this question because it governs an appeal (such as that taken by intervenor) from *the issuance of* a stop work order. The following

section, § 114.11.1, applicable here, states that "[w]ithin 10 business days after the date of receipt of the appeals form [challenging a stop work order], the *code official* shall affirm, modify, or reverse the previous action or decision. The decision of the *code official* shall be the final decision of the *Department . . . .*"

Appeals of final decisions made by code officials are governed by 12-A DCMR § 112.2.1 (2014). "[A]ny person adversely affected or aggrieved by a final decision or order of the *code official* based in whole or in part upon the *Construction Codes*" may appeal to OAH. Mr. Gamboa's lifting of the stop work order was a "final decision" that any aggrieved party, including a neighbor, could appeal. Thus, petitioners should have filed their appeal within 10 business days of learning of Mr. Gamboa's decision.

Petitioners protest that the issuance of a building permit, not the lifting of a stop work order, is the "relevant decision that triggers the right to appeal under § 112." We agree that petitioners could have appealed from the issuance of the building permits in 2012. However, the regulations do not tie the time for appealing "to the issuance of a specified type of notice." *Basken v. District of Columbia Bd. of Zoning Adjustment*, 946 A.2d 356, 366 (D.C. 2008). Our case law specifically recognizes that decisions other than the issuance of a building permit

may start the time to appeal. *See, e.g.*, *id.* at 365-66 (although revised building permit was ambiguous, subsequent letter from DCRA Director was not and "allowed the clock to begin running" on time to appeal).

Although this court has not addressed whether the lifting of a stop work order is appealable, our neighboring state of Maryland has considered this exact question. *See Montgomery County v. Longo*, 975 A.2d 312, 330 (Md. Ct. Spec. App. 2009). There, a neighbor did not timely challenge the issuance of a building permit, but, after construction began, complained of permit violations, and a stop work order was issued. The court reasoned that, when the administrative agency considered lifting the stop work order, it was "not merely reconsidering whether its initial decision to issue the building permit was correct." *Id*. at 329. Rather, the agency assessed whether "the building, as constructed, met the requirements for an addition" and made a new decision in response to new facts revealed during the construction process. *Id*. at 329-30. Therefore, the court held "that the decision to lift the stop work order was an appealable decision or order." *Id*.[4]

---

[4] Section 8-23 (a) of the Montgomery County Code (2002) governed the right to appeal and stated that "[a]ny person aggrieved by the issuance, denial, renewal, or revocation of a permit or any other decision or order of the Department [of Permitting Services] under this Chapter may appeal to the County Board of Appeals within 30 days after the permit is issued, denied, renewed, or revoked, or the order or decision is issued." *Longo*, 975 A.2d at 327.

Similarly, when intervenor appealed the issuance of the stop work order to DCRA, the code official held a hearing on the matter and assessed whether the fence/wall as constructed violated the Construction Code. The code official's decision to allow work to resume was a new decision that considered new facts. *Id*. at 330; *see also Basken*, 946 A.2d at 366-67 (holding that issuance of a certificate of occupancy is "an appealable event" because it "may evidence a decision that is different from any that has come before with respect to a project").

The code official's decision to lift the stop work order was a final decision appealable pursuant to § 112.2.1. Because petitioners failed to appeal within 10 business days after they had notice of that decision, their appeal was untimely.

### B.  Petitioners' Timely Appeal of the 2014 Permit

Petitioners also argue that the ALJ erred in concluding that they could not challenge the "overall construction" of the wall through their timely appeal of the 2014 permit. They complain that "the ALJ cites no record evidence to support his conclusion that the only changes authorized by the 2014 Building Permit were the addition of stucco to the Wall and the lowering of slats on the fence." Petitioners

assert that the CFA requested, and DCRA required, intervenor to file a new application "with complete detailed and dimensioned site plan, plans, elevations, and detail drawings with permit application for review by the [CFA]." According to petitioners, testimony would show that DCRA treated this as an "after the fact" permit, "giving it a full and complete structural review."

"Ordinarily, the building permit is the document that reflects a . . . decision about whether a proposed structure, and its intended use as described in the permit application, conform" to the regulations. *Basken*, 946 A.2d at 364. Thus, Judge Handy properly focused on the 2014 permit itself. It stated that "Permission Is Hereby Granted To [Intervenor]" to conduct work described as "lower existing fence" and "add stucco facing to exterior of already constructed wall." Considered in context, this was quite understandable. As Judge Handy noted, the only reason intervenor was even required to obtain the 2014 building permit "was because HPO reversed its position on whether CFA approval was needed." The 2014 permit addressed the two cosmetic recommendations made by CFA after it reviewed the existing fence/wall. Contrary to petitioners' argument, it did not purport to grant retroactive approval for work not previously authorized but already completed.

"We defer to OAH findings of fact so long as they are supported by substantial evidence[,] [which] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 181 (D.C. 2006). That test has been met here. The face of the 2014 permit supported the finding that it only authorized adding stucco to the concrete wall and lowering the wooden fence.

Judge Handy's decision that petitioners had acted too late to challenge the "overall construction" of the wall flowed rationally from the findings of fact. Although the 2014 permit had been timely appealed, it addressed specific aesthetic issues and "represented neither a new decision" authorizing the building of the fence/wall "nor [] petitioners' earliest notice of" DCRA's decision to approve the overall construction of the fence/wall. *See Basken*, 946 A.2d at 367-68 (although issuance of a certificate of occupancy was an appealable event, it did not "start another . . . appeal period as to any and all DCRA zoning decisions affecting a project that preceded issuance of the certificate").

## IV. Conclusion

Even if the 2012 building permits were ambiguous as petitioners contend, the completed construction of the wall and the hearing on the stop work order certainly gave petitioners notice of their claims. Moreover, they knew about the code official's decision to lift the stop work order but failed to appeal. Thus, we affirm OAH's finding that petitioners' challenges to the size and location of the wall are untimely. The order dismissing petitioners' administrative appeal is hereby affirmed.

*It is so ordered.*